**Allen Carl SIDNEY, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 1146.**

Supreme Court of Alaska.

May 6, 1970.

Mark C. Rowland of Hendrickson & Rowland, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Harold W. Tobey, Dist. Atty., and Edmund W. Burke, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND, RABINOWITZ, BONEY, and CONNOR, JJ.

RABINOWITZ, Justice.

Appellant Allen Carl Sidney and Raymond Mack were jointly indicted and tried for the crime of larceny in a building. Appellant Sidney was found guilty and sentenced to three years' imprisonment. The crux of Sidney's appeal concerns certain extrajudicial statements made by Raymond Mack which implicated appellant in the commission of the crime charged. Sidney contends that the Supreme Court of the United States' decision in Bruton v. United States [1] requires reversal of his conviction. We disagree and affirm appellant Sidney's conviction.

In *Bruton,* the extrajudicial confession of Bruton's co-defendant, Evans, that they had committed armed robbery, was admitted in evidence at their joint trial. Co-defendant Evans did not testify at trial, and thus was not subject to cross-examination by Bruton. Relying upon the Supreme Court's opinion in Delli Paoli v. United States,[2] the trial court instructed the jury that Evans' confession inculpating Bruton should be disregarded in deciding the latter's guilt or innocence. The Supreme Court in *Bruton* overruled *Delli Paoli,* holding that in such circumstances the trial court's limiting instructions could not be accepted as an adequate substitute for Bruton's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. In writing for a majority of the Court, Mr. Justice Brennan said:

> We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of

1. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

2. 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957).

Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. We therefore overrule Delli Paoli and reverse.[3]

After emphasizing that Evans' hearsay statement inculpating Bruton was clearly inadmissible against the latter under traditional rules of evidence, the Court said that the

> practical and human limitations of the jury system cannot be ignored * * * where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.[4]

On the record before us, we believe *Bruton* is distinguishable, and therefore hold that the admission of co-defendant Mack's inculpatory extrajudicial statements does not require reversal of appellant Sidney's conviction.

■ Appellant Sidney and co-defendant Mack were charged with having stolen groceries from the S & F. Foodland store building located in Anchorage. At trial, Charles Bade, then assistant manager of S & F Foodland, testified that one of his checkers informed him that "groceries had just gone out the door without being paid for and that she's noticed Sidney had been shopping with this other fellow Mack, and that nobody had paid for 'em." Bade then approached Sidney, who was standing alongside one of the check stands, and asked him if he had paid for the groceries. Sidney said he had not paid for them, that Mack had paid for the groceries or was supposed to pay for the groceries, and that if Mack had not paid for the groceries, Bade ought to go after him since Mack had just left the premises. Bade then went outside of the store, located Mack sitting in a station wagon and at the same time observed unbagged groceries strewn on the back seat of the vehicle. Bade then asked Mack if he had paid for the groceries. Mack's reply was that he had not, and that Sidney was supposed to pay for the groceries.[5] Appellant Sidney's counsel did not offer any objection to Bade's testimony relating Mack's extrajudicial statements.

Felix J. Martinez, manager of the S & F Foodland store, next testified for the prosecution. After receiving notification from one of his employees that he was wanted, Martinez went to the parking area in front of the store. In regard to what then transpired, Martinez was asked whether Mack had said anything to him concerning "Sidney's participation in the situation." Martinez' response was, "Yes, well, when— he actually admitted taking the groceries at the one time and then I asked * * *." At this point, counsel for Sidney interposed an objection "to any references made to Mr. Sidney as being hearsay with regard to Mr. Sidney." The jury was then excused and the court heard the government's offer of proof. At the conclusion of this proceeding, the jury was recalled and instructed that the testimony they were about to hear from Martinez was

> to be considered for its probative value against the—as it may have against the defendant, Mack. It is not to be con-

---

3. 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476, 479 (1968).

4. *Id.* at 135–136, 88 S.Ct. at 1627–1628, 20 L.Ed.2d at 485 (footnotes omitted).

5. At the time Bade's conversation with Mack took place, Sidney was standing on the sidewalk area immediately in front of the station wagon.

sidered as—as any connection, as either tending to establish guilt or innocence of the defendant, Sidney.[6]

Martinez then resumed his testimony and said that the following occurred during his conversation with co-defendant Mack:

Then I asked him, did you voluntarily take this groceries out of the store or did you steal this grocery and he admitted to the fact that he had taken the groceries, but he was not in it by himself. At this time he pointed directly to Mr. Sidney and he says, he helped me take the groceries. At this time Mr. Sidney turned around and punched Mr. Mack, struck him in the face, of course, and called him a dirty liar.

The prosecution's last witness was Frederick S. Cornelius, an officer with the Anchorage Police Department. Officer Cornelius testified that he was called to investigate the situation in question at the S & F Foodland. After an on-the-scene investigation, Officer Cornelius arrested co-defendant Mack and requested appellant Sidney to accompany him to police headquarters. Officer Cornelius was asked if he had a conversation with Mack at police headquarters, and answered, "Yes, sir. I spoke to Mr. Mack and Mr. Mack advised me that Sidney had ad—asked him  *  *." Counsel for Sidney then objected to any reference by Mack to Sidney on the grounds of hearsay. The trial court instructed the jury that

the statements made are admissible only against the defendant Mack and will be considered in—as probative value and given such weight that may be entitled to against that defendant.

Officer Cornelius then related that:

I can't recall where he said that he had been picked up by Mr. Sidney and that Mr. Sidney had asked him to go with him to the grocery store to get some groceries and that he was just accompanying Mr. Sidney and that it was Mr. Sidney's idea to take the groceries, not his; that's basically what it was. I can't recall exactly.

The trial judge immediately instructed the jury to disregard all of this testimony. Out of the presence of the jury, Sidney's counsel moved for a mistrial which motion was denied.[7] The jury was then recalled and given the following oral instruction:

Members of the jury, as you recall just immediately before the adjournment, I

---

6. In his instructions to the jury at the close of the case, the trial judge said in part:

Out of court statements or admissions constitute evidence only against the person making it. Such must not be considered as evidence against a co-defendant and must be disregarded by the jury in determining the guilt or innocence of a co-defendant.

The jurors were also told that they must give separate consideration to each individual defendant, and to each separate charge against him. Each defendant is entitled to have his case determined from his own conduct and from the evidence which may be applicable to him.

7. In articulating his reasons for denying appellant's motion for mistrial, the trial judge in part stated:

In response to the State's position that the evidence is not prejudicial in any respect, I view the Mack's statement as exculpatory to him and incriminating the defendant, Sidney, and that it tends to be prejudicial to Sidney and that in fact such a statement is prejudicial on the balance, however, I do not feel that the statement is so prejudicial as to require me granting a mistrial. The testimony to this point indicates that while Mack has made efforts to—in statements prior to the time that he was taken into custody by the store manager and after that time, tending to incriminate the defendant, Sidney, that at all times the defendants—and at all opportunities the defendant, Sidney, has denied his culpability and responsibility. Moreover I feel that the admissions which is—or that the statement which is questioned now is contrary to prior statements made by the defendant, Mack; that this con—this conflict in his statements is readily apparent to the jury. They're taken in this connection together with the instruction given to the jury, I do not feel that the prejudicial effect of the statement is such that we should now discontinue

advised you that there was a statement made by Mack that you should disregard and I was going to strike it from the evidence. I want you to refrain in your consideration of this evidence from considering that statement for any purpose. I have excluded the evidence; I found that it should not have come in and that it should be stricken from the record.

After the government rested its case, co-defendant Mack testified in his own behalf and was cross-examined by appellant Sidney's counsel.

Assuming that the extrajudicial statement of Mack which was testified to by the witness Martinez was inadmissible against appellant under the traditional rules of evidence, we still do not consider *Bruton* controlling. For in the case at bar, admission of this incriminating extrajudicial statement was not violative of Sidney's right of cross-examination secured by both the Confrontation Clause of the Sixth Amendment and Article I, Section 11 of the Alaska Constitution. In *Bruton*, the co-defendant whose extrajudicial statement incriminated the defendant-appellant did not testify, but in the case at bar, the co-defendant testified. Appellant was afforded the opportunity to confront and cross-examine the very person whose extrajudicial statements inculpated him. In such circumstances, the confrontation cross-examination rationale of *Bruton* is

absent. We decline to extend *Bruton* to the situation where at a joint trial the co-defendant testifies, and thus, the defendant is not deprived of his right to confront and cross-examine his co-defendant as to the latter's extrajudicial statement. Our conclusion that *Bruton* should not be extended to the factual situation presented by this record is in accord with judicial developments since *Bruton* was decided.[8] In short, the confrontation rationale of *Bruton* is not applicable in the present case.[9] Additionally, we are of the view that in the context of this record it is not unreasonable to conclude that the jury could have followed the trial court's limiting instructions. The Supreme Court of the United States said in *Bruton* that:

> Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information.[10]

Thus, assuming that co-defendant Mack's extrajudicial statements made to and related by Martinez were inadmissible hearsay, we believe that the trial judge's limit-

the prosecution. I'm going to let the trial continue. I will instruct the jury that they must carefully refrain from considering the statement for any purpose * * *.

8. *See*, e. g., United States v. Boone, 401 F.2d 659, 663 n. 12 (3d Cir. 1968), cert. denied, Jackson v. United States, 394 U.S. 933, 89 S.Ct. 1205, 22 L.Ed.2d 463 (1969); Rios-Ramirez v. United States, 403 F.2d 1016, 1017 (9th Cir. 1968), cert. denied, 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486 (1969); State v. Gardner, 54 N.J. 37, 252 A.2d 726, 730 (1969).

9. Appellant further argues that we should adopt the reasoning of Townsend v. Henderson, 405 F.2d 324, 329 (6th Cir. 1968), where the court said:

> The only possible distinction between the present case and *Bruton* is that in *Bruton* the co-defendant did not take the witness stand, whereas here Terry did testify in his own behalf. But, this distinction is unimportant since, although Terry was called as a witness, he denied making the confession. Townsend therefore had no effective right of cross-examination in regard to the confession.
>
> We need not on this record decide whether we will adopt the *Townsend* rule. It is sufficient to note that the case at bar does not present a comparable factual situation.

10. Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484–485 (1968).

ing instructions protected appellant Sidney's right to a fair trial. In addition to Sidney having had the opportunity to cross-examine co-defendant Mack, the jury was made aware at the outset of the trial through the testimony of the witness Bade of the contradictory positions of Sidney and Mack regarding who was to have paid for the groceries. This conflict was re-iterated in the testimony of each of the prosecution's witnesses and was further highlighted in the direct and cross-examinations of co-defendant Mack.

We believe the foregoing to be largely dispositive of appellant's contention that the trial court committed reversible error in not granting his motion for mistrial. This motion was made during Officer Cornelius' testimony and was occasioned by Cornelius' reference to an extrajudicial statement by Mack which incriminated Sidney. The trial judge specifically instructed the jury to disregard this testimony in its entirety, and that it was not part of the evidence in the case. Study of the record has not left us with the firm conviction that the trial judge abused his discretion in refusing to grant a mistrial.[11] The record reflects the careful consideration given by the trial court to appellant's contentions and the appropriate safeguards adopted by the trial court in order to insure that appellant received a fair trial.

■ Appellant's final point on this appeal concerns AS 11.20.150 which defines the crime of larceny in a build-ing, and its relation to AS 11.20.140, Alaska's general larceny statute.[12] Appellant argues these statutes when read together constitute an unlawful delegation of legislative and judicial power to the district attorney, and further, since persons similarly situated can receive unequal treatment under the two statutes, they constitute a denial of due process.[13]

We find no merit in appellant's contentions. In Widermyre v. State,[14] appellant argued in part that his conviction of larceny in a building should be reversed because the value of the property he stole was less than $100, and that Alaska's larceny in a building statute should be construed as applying only to larcenies which were classed as felonies under the common law. In regard to these arguments, we said:

> Our simple larceny statute (now AS 11.20.140) became the law of Alaska at the same time [AS 11.20.150] became effective. Both statutes were enacted to serve separate purposes. [AS 11.20.150] has the purpose of treating any larceny committed in any dwelling house, banking house, office, store, shop, etc., as aggravated. The value of goods taken is not intended to be a factor by which to determine whether a particular theft is a felony or a misdemeanor. All larcenies committed on the premises mentioned are classified as serious offenses against society and as felonies.[15]

We therefore hold that AS 11.20.150 embodies a rational basis for distinguishing

---

11. Anderson v. State, 438 P.2d 228, 233 (Alaska 1968); Pedersen v. State, 420 P.2d 327, 333 (Alaska 1966).

12. AS 11.20.150 provides in part as follows:
   A person who commits the crime of larceny in a * * * store * * * is punishable by imprisonment in the penitentiary for not less than one nor more than seven years.
   AS 11.20.140, the general larceny statute, provides in part:
   A person who steals * * * goods * * * which is the property of another, is guilty of larceny. * * * If the property stolen does not exceed $100

in value, the person, upon conviction, is punishable by imprisonment in a jail for not less than one month nor more than one year, or by a fine of not less than $25 nor more than $100.

13. Appellant also argues that AS 11.20.150 is unconstitutional on its face and as applied to him in the instant case.

14. 377 P.2d 536 (Alaska 1963).

15. Id. at 537. See Fosse v. United States, 44 F.2d 915, 916 (9th Cir. 1930); State v. Savage, 36 Or. 191, 60 P. 610, 611 (1900); State v. Reyner, 50 Or. 224, 91 P. 301, 302–303 (1907).

acts which would otherwise be encompassed within our general larceny statute.

The judgment and commitment entered below is affirmed.

NESBETT, C. J., not participating.