Edward A. MEAD, Appellant,

v.

STATE of Alaska, Appellee.

No. 1430.

Supreme Court of Alaska.

Dec. 29, 1972.

Herbert D. Soll, Public Defender, James D. Gilmore and Larry Jordan, Asst. Public Defenders, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Norman C. Gorsuch, Deputy Atty. Gen., Juneau, Charles Merriner, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

RABINOWITZ, Chief Justice.

In 1961, Edward Mead and two codefendants, Henderson and Shott, were convicted of two counts of burglary. Thereafter, the three filed a notice of appeal and a petition for leave to appeal in forma pauperis. Exercising its discretionary power under Alaska's then applicable procedural rule, the superior court denied the petition to proceed in forma pauperis, and the appeal was not prosecuted. In 1969, Mead filed an application for post-conviction relief.[1] The superior court denied Mead's application on condition that he request this court to grant him an extension of time in which to file a notice of appeal from the 1961 judgment of conviction. We granted the motion and Mead's appeal followed.

Before this court, Mead has asserted several specifications of error of substance. Initially, Mead argues that he was denied effective assistance of counsel because his court-appointed counsel also represented his codefendants, Henderson and Shott, at their joint burglaries trial. In his amended application for post-conviction relief, Mead alleges that he told his trial attorney he wanted to testify in his own behalf at trial, but his attorney would not permit him to do so because it might adversely af-

fect Henderson's and Shott's chances of acquittal.[2] Thus, Mead argues that while courts have differed as to the degree of prejudice which is required to demonstrate a denial of effective assistance of counsel in instances of joint representation, the fact that he was not permitted to testify because of the possible effect on his codefendants constituted clear prejudice. Mead also claims to have been denied effective assistance of counsel because his trial attorney failed to object to the admission into evidence of certain statements Mead made on the ground that they were the products of an illegal arrest.[3]

Mead next argues that the admission of Henderson's and Shott's confessions, both of which implicated him in the separate burglaries, deprived him of his sixth amendment right to confront and cross-examine adverse witnesses against him. Mead agrees that his case differs from Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), in that his own confessions were admitted into evidence, but argues that his right to cross-examine was nonetheless violated since neither Henderson nor Shott testified at trial. Mead further contends that this error cannot be regarded as harmless error in the constitutional harmless error sense.

1. Upon his 1961 convictions for burglary, Mead was sentenced to concurrent three-year terms of imprisonment. At the time he filed his application for post-conviction relief pursuant to Alaska Crim.R. 35(b), he had completed service of his sentence on the burglary charges. In his application for post-conviction relief, Mead claimed that these 1961 convictions formed the basis of recidivist proceedings which resulted in his present incarceration.

This case is not moot due to the collateral consequences flowing from Mead's two burglary convictions. Carafas v. La-Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Sibron v. State of New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Roberts v. State, 445 P.2d 674 (Alaska 1968).

2. After oral argument, the state moved to supplement the record in order to file an affidavit of Mead's trial counsel in regard

to Mead's assertion. The state's motion was granted. In his affidavit, Mead's trial counsel states in part that:

It was my recommendation that none of the defendants testify since they had all confessed and their confessions had been accepted in evidence. It is my further recollection that all three defendants concurred with my recommendation . . . .

I did not refuse to permit Mr. Mead to testify ' . . . for the reason that it would have an adverse affect on the trial of (his) co-defendants.' If this had been the case I would have reported the situation to the court and requested that separate counsel be appointed for Mr. Mead.

3. At the appellate level, Mead's present counsel assert that there appears to be no conceivable tactical reason for trial counsel's failure to raise the sham arrest issue.

Lastly, Mead challenges the admission of his own confessions on three grounds. First, that his arrest was a sham because it is clear from the record that the police did not arrest him for vagrancy, but because they wanted to question him about the subject burglaries; second, that his confessions were not made voluntarily, and that the trial court failed to make adequate independent findings as to their voluntariness; and third, that his confessions were products of an illegal arrest because the vagrancy ordinance under which he was arrested was unconstitutional.[4]

Mead's specification of error relating to his asserted denial of the right of confrontation will be discussed first. In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court of the United States held that the admission of an extrajudicial confession of a codefendant who did not testify deprived the defendant of his right of cross-examination secured by the Confrontation Clause of the sixth amendment.[5] Thereafter, Bruton was held to be retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968).[6]

■ Since Russell makes Bruton retroactively applicable to Mead's 1961 trial, our threshold inquiry goes to the question of whether the facts of this case come under the Bruton rationale. The only fact which distinguishes the case at bar from Bruton is that Mead's own confessions were admitted into evidence along with the confessions of his nontestifying codefendants. In our view, this circumstance does not appear to have any bearing on the fact that Mead was denied the right to confront and cross-examine Henderson and Shott concerning their confessions, both of which implicated him in the burglaries. Henderson and Shott were in effect unavailable to testify since Mead could not compel them to take the stand. And Mead had no actual opportunity to cross-examine them since they did not take the stand. The fact that the trial court instructed the jury not to consider the separate confessions of Mead, Shott, and Henderson as any evidence against the others does not remove the case from the ambit of Bruton for there the Supreme Court of the United States said

> in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.[7]

■ The admission of Mead's confessions does however raise the question of whether the denial of Mead's constitutional right to cross-examine Henderson and Shott was harmless error. Since the error complained of here involves a federal constitutional right, we are obligated to apply

4. Mead notes that this ordinance has, since his trial in 1961, been declared unconstitutional by a judge of the District Court of Alaska, Third Judicial District. Mead asks that we give retroactive effect to this district court ruling. Alternatively, he asks that we treat the challenge to the ordinance's constitutionality as a first impression question, since he was precluded from timely appealing in 1961 and for the first time is directly appealing his 1961 conviction. Mead further asserts that there is nothing in the record to show that he waived his right to challenge the constitutionality of the Anchorage vagrancy ordinance.

5. In Bruton, the trial court, relying upon the Supreme Court's opinion in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), in-structed the jury that the codefendant's confession which inculpated Bruton should be disregarded in deciding the latter's innocence or guilt. Bruton overruled Delli Paoli, by concluding that in such circumstances the trial court's limiting instructions could not be accepted as an adequate substitute for Bruton's right of cross-examination. 391 U.S. at 126, 88 S.Ct. at 1622, 20 L.Ed.2d at 479.

6. Cf. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971), which holds that Bruton does not apply where the co-defendant, whose statement is admitted, actually testifies. We reached the same conclusion a year earlier in Sidney v. State, 468 P.2d 960 (Alaska 1970).

7. Bruton v. United States, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, 485 (1968).

the harmless error rule articulated in Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967). Under this stringent standard, we must be able to conclude that the admission of Henderson's and Shott's confessions, absent opportunity for Mead to cross-examine those codefendants, was harmless error beyond a reasonable doubt.[8] From our study of the factual context of this case, we are unable to conclude that the admission into evidence of Henderson's and Shott's confessions was harmless error beyond a reasonable doubt.

Mead's defense centered on the involuntary nature of the two confessions which the prosecution introduced into evidence against him. The trial judge instructed the jurors that they were to disregard Mead's confessions if the "evidence does not convince them beyond all reasonable doubt" that his confessions were made voluntarily and understandingly.[9] The trial judge further explained to the jurors that a confession induced by threat of harm, promises of leniency in punishment, or other reward, should not be considered as having been voluntarily made "because of the danger that a person accused might be persuaded by the presence of hope or fear to confess as facts, things which are not true, in an effort to avoid threatened harm or to secure a promised reward."[10] Of further significance to our resolution of this constitutional harmless error issue is the fact that the trial judge gave the jury a detailed "common plan" instruction.[11]

8. Davis v. State, 499 P.2d 1025, 1033 (Alaska 1972); Love v. State, 457 P.2d 622, 631 (Alaska 1969). In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court applied the harmless error rule to a denial of the right to confront and cross-examine witnesses.

9. Initially, a hearing was held outside the jury's presence regarding the admissibility of Mead's confessions. Mead testified at this hearing. At the conclusion of the hearing, the trial judge overruled Mead's objections to the admissibility of the confessions.

10. Although now considered ineffectual in light of *Bruton*, the trial court also instructed that "A confession made outside of Court by one defendant may not be considered as evidence against another defendant not a party to such confession."

11. The trial court's instruction read in full as follows:

When two or more persons associate themselves together in carrying out a common plan, lawful or unlawful, there arises from the very act of associating themselves together for such a purpose a kind of partnership, in which each member becomes the agent of every other member.

So in a case where the evidence shows a common plan or arrangement between two or more persons, evidence as to an act done or statement made by one is admissible against all, provided the act be knowingly done and the statement be knowingly made during the continuance of the arrangement between them, and in furtherance of an object or purpose of the common plan.

In order to establish proof that a common plan or arrangement existed, the evidence must show that the parties to the plan in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish some common object or purpose.

In order to establish proof that a defendant, or any other person, was a party to or member of some common plan or arrangement, the evidence must show that the plan was formed, and that the defendant, or other person who is claimed to have been a member, knowingly participated in the plan with the intent to advance or further some object or purpose of the plan.

In determining whether or not a defendant, or any other person, was a party to or member of a common plan, the jury are not to consider what others may have said or done. That is to say, the membership of a defendant, or any other person, in a common plan must be established by evidence as to his own conduct, what he himself said or did.

If and when it appears from the evidence that a common plan did exist, and that a defendant was one of the members, then the acts thereafter knowingly done, and the statements thereafter knowingly made, by any person likewise found to be a member, may be considered by the jury as evidence in

At one point on this somewhat confusing instruction, the jurors were advised that

> when it appears from the evidence that a common plan did exist . . . then the acts thereafter knowingly done, and the statements thereafter knowingly made, by any person likewise found to be a member, may be considered by the jury as evidence in the case as to the defendant found to have been a member, even though the acts and statements may have occurred in the absence and without the knowledge of the defendant, provided such acts and statements were knowingly done and made during the continuance of such common plan and in furtherance of any object or purpose of the plan.[12]

The court also instructed that in determining whether an accused was a member of a "common plan," the jurors were "not to consider what others may have said or done. That is to say, the membership of a defendant, or any other person, in a common plan must be established by evidence as to his own conduct, what he himself said or did."

In his final argument to the jury, the prosecutor alluded to the fact that each of the separate confessions of Mead, Henderson, and Shott was in itself "a complete documentary description" of the burglaries "yet there is no evidence that they knew or that any one told them before they made these statements just what happened." The state's attorney also pointed to the fact that the defendants' confessions reflected "a definite common plan and design." The prosecutor further argued to the jury that:

> Now the court will instruct you that when there is a common plan or design and each of the defendants is charged with the commission of the act, it is not necessary that each of the defendants do all of the acts alleged. . . . *You will read over these statements and you will decide for yourselves whether or not they had a common plan or design. Now the court will further instruct you and it is definitely the law that the statement of one cannot be used against the other but from these statements you can see the common plan or design that existed in the mind of each of them at the time these offenses were committed.* (Emphasis supplied)

Mead's trial counsel in his final argument to the jury emphasized that the prosecution's case was based primarily upon the confessions of Mead, Henderson, and Shott and then went to considerable lengths in arguing the involuntary nature of the confessions.[13]

This factual context leads us to conclude that here, unlike Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), a recent *Bruton* harmless error decision of the Supreme Court, the prejudicial effect of Henderson's and Shott's confessions was so significant that we cannot

---

the case as to the defendant found to have been a member, even though the acts and statements may have occurred in the absence and without the knowledge of the defendant, provided such acts and statements were knowingly done and made during the continuance of such common plan and in furtherance of an object or purpose of the plan.

Otherwise any admission or incriminatory statement made outside of court by one person may not be considered as evidence against any person who was not present and heard the statement made.

12. The jury was not told when a common plan terminated for purposes of applying the "continuance of such common plan and in furtherance of an object or purpose of the plan" portion of this instruction.

13. Mead's trial counsel concluded his final argument on the following note:

> But I ask you to consider whether in this case these confessions are all right or whether in fact there wasn't some promise of leniency, some hope of having an easier time of it that prompted these—or was held out to these boys that prompted them to give these confessions and therefore any instruction that you'll be given you must exclude the confessions and of course without the confessions there is no case.

say their admission was harmless error beyond a reasonable doubt. Even employing the *Schneble* test,[14] we think there is a reasonable possibility that this improperly admitted evidence contributed to Mead's burglary convictions.

Given the central role occupied in Mead's trial by the voluntary-involuntary confessions issue, it is not difficult to perceive the potential impact of Henderson's and Shott's confessions upon the jury's resolution of this issue. In the case at bar, the jurors were specifically instructed that the law required exclusion of involuntary confessions because of the strong likelihood of their testimonial unreliability. Since the prosecutor brought home to the jury the detail similarity of the separate confessions, Henderson's and Shott's confessions could have led the jurors to believe that Mead's confessions were more credible and truthful. And the average juror could have therefore decided that the codefendants' confessions should not be ex-cluded from his determination of Mead's innocence or guilt.[15]

We previously noted that the jurors were also instructed that they could find Mead guilty of the burglaries even if he did not personally commit the acts of burglary as long as such acts were committed in continuation of a common plan, and in furtherance of an object or purpose of the common plan. In view of this theory of criminal responsibility and the prosecutor's final argument to the effect that the jury could find proof of a common plan from study of the separate confessions of Mead, Henderson, and Shott, we are faced with an insurmountable barrier to a harmless error beyond a reasonable doubt conclusion. For, here again we think there is a reasonable probability that the improperly admitted confessions of Henderson and Shott contributed to Mead's conviction under the trial court's "common plan" instructions.

Reversed and remanded for a new trial.[16]

ERWIN, J., not participating.

14. The *Schneble* Court intimated that unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. 405 U.S. at 432, 92 S. Ct. at 1060, 31 L.Ed.2d at 345.

15. Aside from the confessions of Henderson and Shott, the only substantial evidence which connected Mead with the burglaries in question was Mead's own confession.
   *Compare* Schneble v. Florida, 405 U.S. 427, 431, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972), where Justice Rehnquist, writing for the majority, made the following opaque observation:
   True under the judge's charge, the jury might have found the confession involuntary and therefore inadmissible. But this argument proves too much; without Schneble's confession and the resulting discovery of the body, the State's case against Schneble was virtually nonexistent.

16. Our disposition of the *Bruton* confrontation issue makes resolution of any other issue in this appeal unnecessary.