Oliver Floyd **LEMON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1738.

Supreme Court of Alaska.

Oct. 15, 1973.

Herbert D. Soll, Public Defender, Anchorage, Stephen R. Cline, Asst. Public Defender, Fairbanks, for appellant.

John E. Havelock, Atty. Gen., Juneau, Monroe N. Clayton, Dist. Atty., James Hackett, Robert B. Downes, Asst. Dist. Attys., Fairbanks, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

This appeal arises from a conviction for the crime of burglary not in a dwelling under AS 11.20.100. Appellant Oliver Floyd Lemon maintains that evidence of a small speck of safe insulation alleged to have come from the premises and later discovered in one of his pants pockets was improperly admitted since the insulation was the product of a warrantless seizure and search of the clothing he was wearing at the time of his arrest, and there was no probable cause for a detailed analysis of said clothing. Lemon further argues that he was denied his right of confrontation under the sixth and fourteenth amendments to the United States Constitution and article I, section 11, of the Alaska Constitution by the admission of hearsay

testimony of an alleged accomplice's statements when the declarant was not available for effective cross-examination due to the privilege against self-incrimination. In addition, appellant urges that the imposition of the maximum sentence of five years was excessive.

Since we agree that Lemon was denied his right to confront the witness against him, we reverse on those grounds and do not reach the issue of whether the sentence imposed was excessive. As the issue of the admissibility of the evidence obtained from the search of Lemon's clothing will undoubtedly arise in any retrial, it is imperative to discuss it to avoid any errors on remand.

## THE FACTUAL AND PROCEDURAL BACKGROUND OF THE CONTROVERSY

In the early morning hours of February 5, 1972, the Pioneer Cleaners in Fairbanks, Alaska was burglarized. A safe on the premises was broken into and the contents removed.

Oliver Floyd Lemon and Michael Lonergan were ultimately charged with the crime. Lemon was arrested at approximately 7:30 p. m. on February 6, 1972 in Barrow, Alaska. He was charged with burglary not in a dwelling under AS 11.20.100[1] and placed in the Barrow City Jail. Although the arresting officer was uncertain as to whether he searched Lemon immediately at the time of the arrest, he did search him upon his arrival at the jail. The officer then searched Lemon's hotel room, seizing some of the defendant's clothes as evidence, although the fruits of this search were later suppressed in a hearing in Fairbanks superior court on April 17, 1972. After the search of the hotel room, the officer returned to the jail, and Lemon changed into clothes supplied by the officer. Lemon's own clothes were then retained as evidence

for the trial, and testimony was admitted that a small speck of safe insulation was found in the pants that matched the insulation from the safe burglarized at the Pioneer Cleaners.

Prior to Lemon's trial, Michael Lonergan pleaded guilty to the crime of burglary. When called by the state as a witness in Lemon's trial, Lonergan invoked the privilege against self-incrimination provided by the fifth and fourteenth amendments to the United States Constitution and article I, section 9, of the Alaska Constitution. Although he admitted knowing the defendant Lemon and pleading guilty to the burglary of the Pioneer Cleaners, Lonergan, on the advice of his attorney, refused to answer all material questions, refused to admit or deny making any previous statements about the burglary to the police, and said nothing to implicate or exonerate the defendant Lemon.

After Lonergan was excused, the state called two police officers who testified as to statements made by Lonergan at a police station interview. This hearsay testimony indicated that Lonergan had stated that Lemon was present during the burglary and included details of the crime.

The only evidence placing Lemon at the scene of the burglary was the testimony regarding the insulation found in Lemon's clothes and the hearsay testimony of the officers. The jury heard all of this testimony and returned a guilty verdict on April 21, 1972.

## THE HEARSAY TESTIMONY OF THE OFFICERS AND THE DEFENDANT'S RIGHT TO CONFRONT THE WITNESSES AGAINST HIM

It is well established that a criminal defendant has the right to confront the witnesses against him. The sixth amendment to the United States Constitution provides

1. AS 11.20.100 provides in pertinent part:
   A person who breaks and enters . . . a building or part of it . . . or other structure or erection in which property is kept, with intent to steal, or to commit

   a felony in it, is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than two nor more than five years.

in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." Since 1965, this provision has been fully applicable to the states under the due process clause of the fourteenth amendment to the United States Constitution. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Moreover, article I, section 11, of the Alaska Constitution provides that "[t]he accused is entitled . . . to be confronted with the witnesses against him. . . ."

This right of confrontation protects two vital interests of the defendant. First, it guarantees him the opportunity to cross-examine the witnesses against him so as to test their sincerity, memory, ability to perceive and relate, and the factual basis of their statements.[2] Second, it enables the defendant to demonstrate to the jury the witness' demeanor when confronted by the defendant so that the inherent veracity of the witness is displayed in the crucible of the courtroom.[3]

These two interests are not so absolute, however, that they require that each witness' statements be subject to contemporaneous cross-examination. Beavers v. State, 492 P.2d 88 (Alaska 1971); Sidney v. State, 468 P.2d 960 (Alaska 1970).[4] In interpreting the right of confrontation guaranteed by the sixth and fourteenth amendments to the United States Constitution, the United States Supreme Court has recognized that prior statements by a witness may be admissible as substantive evidence where the declarant is testifying at the present hearing and admits having made a prior statement, California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L. Ed.2d 489 (1970), or where he is testifying favorably to the defendant and denies the prior statement, Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). In either case, the defendant has the right effectively to examine the declarant regarding the circumstances surrounding the statement, and the jury has the opportunity to judge the declarant's demeanor.

The United States Supreme Court has also recognized that prior testimony given at a hearing where the defendant had the effective right to cross-examine the declarant is admissible at a subsequent trial where the declarant is bona fidely unavailable or is testifying but effective cross-ex-

2. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, 308–309 (1973), the Supreme Court stated:
   The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. . . . The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the "accuracy of the truth-determining process" . . . . Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. But its denial or significant diminution calls into question the ultimate "integrity of the fact-finding process" and requires that the competing interest be closely examined. (Citations omitted.)

3. In Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255, 260 (1968), the court stated, "The right to confrontation is basically a trial right. It includes both

the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." In Mattox v. United States, 156 U.S. 237, 242, 15 S.Ct. 337, 339, 39 L.Ed. 409, 411 (1895), the Court noted that the primary purpose of the confrontation clause

was to prevent depositions or *ex parte* affidavits . . . in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor on the stand and the manner in which he gives his testimony whether he is worthy of belief.

4. In Fresneda v. State, 483 P.2d 1011, 1017 (Alaska 1971), we expressly adopted the standards of due diligence of Barber v. Page pertaining to attempts to find and obtain the presence of a witness before using his former testimony.

amination is impaired by the declarant's lack of recollection as to the statement. California v. Green, 399 U.S. at 165, 90 S. Ct. at 1938, 26 L.Ed.2d at 501; *cf.* Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L. Ed.2d 255 (1968). In these instances, of course, the interest in displaying the declarant's demeanor to the jury may not be fully protected since the cross-examination does not occur before the jury.

Finally, the United States Supreme Court has held that in certain narrow instances, the right to cross-examine the declarant is not an indispensable element of the confrontation clause where testimony is admitted via an established exception to the hearsay rule. Dutton v. Evans, 400 U. S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (declarations of a co-conspirator); Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (dying declarations). And the Court has explicitly noted that where the right to cross-examine is afforded, the fact that the testimony may be in violation of the hearsay rule does not render it per se a violation of the confrontation clause.

> While it may be readily conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their ex-

ceptions as they existed historically at common law. California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1934, 26 L. Ed.2d 489, 495 (1970).

■ In sum, the United States Supreme Court has stated that while the demeanor interest of the right of confrontation is not a crucial element, the right to effective cross-examination is essential unless the testimony falls within certain established exceptions to the hearsay rule.[5] Since in the instant case, Lemon was denied the right to cross-examine Lonergan as to his prior statements because of Lonergan's invocation of the privilege against self-incrimination, and the statement did not fall within one of the constitutionally acceptable exceptions to the hearsay rule, there was a denial of Lemon's right of confrontation.[6]

The interaction of the confrontation clause and the effect of a declarant's claim of the fifth amendment privilege against self-incrimination has been dealt with in a series of cases following the leading case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957).[7] In *Bruton,* the Court held that in a joint trial, the introduction into evidence of a co-defendant's confession which also implicated Bruton was a violation of the confrontation clause where the co-defendant refused to take the stand due

5. We are, of course, bound by the United States Supreme Court construction of the United States Constitution including the confrontation clause, although in interpreting Alaska Constitutional provisions such as article I, section 2 (the confrontation clause), we are not required to adopt the United States Supreme Court's views. As long as we measure up to the national standards which are required by the United States Supreme Court, we are at liberty to make constitutional progress in Alaska by our own interpretations. Baker v. City of Fairbanks, 471 P.2d 386, 401 (Alaska 1970); Roberts v. State, 458 P.2d 340, 342 (Alaska 1969).

6. In P.H. v. State, 504 P.2d 837, 842–843 (Alaska 1972), we upheld testimony by a kidnapping victim as to statements made by sev-

eral of her alleged assailants other than the defendant. We held the testimony to be permissible on the principle of testimonial completeness whereby the statements were permitted as providing background information about the event and persons involved. In determining that such testimony did not violate the confrontation clause, a balancing process was approved which reviewed the nature of the evidence, the relationship of other evidence, the opportunity to examine the statement, and the importance to the central issue of the trial. Applying these criteria to this case, there was a clear violation of Lemon's right of confrontation.

7. For a full discussion of the ramifications of the "Bruton Rule", see Annot. 29 L.Ed.2d 931 (1972).

to the fifth amendment and thus was unavailable for cross-examination.[8]

The Court later distinguished *Bruton* in Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). *Dutton* involved the murder of three policemen. Among other prosecution witnesses was a prisoner, Shaw, who testified that one of the accused had told him that if it had not been for the defendant "we wouldn't be in this now." Under Georgia law, the admission of a co-conspirator's out-of-court statement made during the concealment phase of the conspiracy is admissible in evidence. The United States Supreme Court held that the hearsay statements of the co-conspirators were admissible under the long standing state exception to the hearsay rule and did not violate the confrontation clause.

> The Court contrasted that situation with the *Bruton* case where the evidence was: [C]oncededly, wholly inadmissible against the petitioner. . . . The primary focus of the Court's opinion in Bruton was upon the issue of whether the jury in the circumstances presented [joint trial] could reasonably be expected to have followed the trial judge's instructions [to disregard the confession as to Bruton]. 400 U.S. at 85–86, 91 S.Ct. at 218, 27 L.Ed.2d at 225.

The Court went on to hold that the oral statement of Dutton's co-conspirator which implicated Dutton could be testified to even though the declarant was not called and thus was not subjected to cross-examination.

However, the Court was careful to examine the likelihood of any benefit to Dut-ton from cross-examination of the declarant and concluded:

> [T]he possibility that cross-examination . . . could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal. 400 U.S. at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227.

The opinion also noted that 20 other witnesses had appeared for the prosecution in the case, including an eyewitness to the crime, who were subject to full and effective cross-examination. The concurring opinion in fact treated the testimony as harmless error. Thus, the opinion must be read not as an indication that any testimony that satisfied a "long standing exception" to the hearsay rule automatically satisfied the confrontation clause,[9] but that certain narrowly-defined exceptions to the hearsay rule may satisfy the confrontation clause even in the absence of the cross-examination in the light of the factual circumstances of the case.

Both the *Dutton* and *Bruton* cases referred to Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), which is almost identical to the instant case. In *Douglas,* an accomplice was found guilty in a previous trial, but when called as a witness in the trial of Douglas, invoked the privilege against self-incrimination. In the guise of attempting to refresh the accomplice's recollection, the prosecutor purported to read from a confession signed by the accomplice which implicated the defendant. The accomplice refused to acknowledge or deny the statement. The prosecutor then called police

---

8. Although we have applied the *Bruton* rule in Mead v. State, 504 P.2d 855 (Alaska 1972), we have previously recognized that the rule does not apply where the co-defendant, whose statement is admitted, actually testifies. Sidney v. State, 468 P.2d 960 (Alaska 1970). In *Sidney,* however, unlike the instant case, the declarant was subject to full and effective cross-examination. *See also* Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971).

9. As indicated above, the United States Supreme Court has explicitly rejected the contention that the confrontation clause and the rules of hearsay evidence are identical. California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489, 495 (1970). In that instance, they held that a violation of the hearsay rule is not per se a violation of the confrontation clause. The converse is also true, and satisfying the hearsay rule does not automatically indicate that the confrontation clause is satisfied. California v. Green, 399 U.S. at 155, 90 S.Ct. at 1933, 26 L.Ed.2d at 495.

officers who identified the document as the accomplice's statement but did not testify as to its contents. The Court held:

> In circumstances of this case, petitioner's inability to cross-examine Lloyd [the accomplice] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause. Lloyd's alleged statement that the petitioner fired the shotgun constituted the only direct evidence that he had done so; coupled with the description of the circumstances surrounding the shooting, this formed a crucial link in the proof both of petitioner's act and of the requisite intent to murder. Although the Solicitor's reading of Lloyd's alleged statement, and Lloyd's refusals to answer, were not technically testimony, the Solicitor's reading may well have been the equivalent in the jury's mind of testimony that Lloyd in fact made the statement; and Lloyd's reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true. 380 U.S. at 419, 85 S.Ct. at 1077, 13 L.Ed.2d at 937–938. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause. . . . [S]ince their evidence tended to show only that Lloyd made the confession, cross-examination of them as to its genuineness could not substitute for cross-examination of Lloyd to test the truth of the statement itself. . . . [E]ffective confrontation of Lloyd was possible only if Lloyd affirmed the statement as his. However, Lloyd did not do so, but relied on his privilege to refuse

to answer. 380 U.S. at 419–420, 85 S.Ct. at 1077, 13 L.Ed.2d at 938.

It is clear that *Dutton* did not overrule *Douglas.* In *Dutton,* the Court in part based its decision on the fact that the alleged violation of the confrontation clause did not "involve evidence in any sense 'crucial' or 'devastating'. . . .[10] It [did] not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation, as did *Douglas.* . . . [and] . . . *Bruton*", 400 U.S. at 87, 91 S.Ct. at 219, 27 L.Ed.2d at 226. And finally, in the *Dutton* case, there was some indication that the defendant could have called the out-of-court declarant (the co-conspirator) but chose not to do so as a part of trial strategy. 400 U.S. at 88, 91 S.Ct. at 219, 27 L.Ed.2d at 226, n. 19.

Faced with these precedents and the denial of Lemon's right to cross-examine, we must reverse. The testimony was not admissible for impeachment purposes within the *Beavers* or *Sidney* rationale since Lonergan neither affirmed nor denied the statement and refused to give any other material testimony. There is no indication that any long standing exception to the hearsay rule comparable to the co-conspirator exception of *Dutton* was applicable. As in *Bruton, Douglas* and *Mead,* Lonergan's claim of the fifth amendment privilege against self-incrimination was a total bar to effective cross-examination, with no indication that the lack of cross-examination was partially attributable to the defendant's "trial strategy" within the *Dutton* situation.[11] And similar to the *Douglas* and *Bruton* cases, the testimony was "suspect" as testimony as to a custodial confession of an accomplice,[12] and "devastating"

---

10. *See* P. H. v. State, 504 P.2d 837 (Alaska 1972).

11. The trial judge in this instance specifically ruled that Lonergan did not have to answer any of the material questions with regard to his alleged statement due to his invocation of the fifth amendment. Since the issue was not before us, we do not pass on whether the ruling was correct.

12. In addition to the fact that any statement given in the "coercive atmosphere of official interrogation", *Dutton,* 400 U.S. at 87, 91 S.Ct. at 219, 27 L.Ed.2d at 226, should be subject to intense scrutiny, we have previously recognized that:

> An accomplice's testimony is viewed with distrust, because the accomplice usually believes he has a personal interest in aiding the prosecution. Fresneda v. State, 458

in that it was a major part of the state's case placing Lemon at the scene. To sustain this type of testimony in a criminal trial would reduce the right of cross-examination guaranteed by the confrontation clause to a nullity.

## THE SEARCH OF THE CLOTHING LEMON WAS WEARING AT THE TIME OF THE ARREST

■ Appellant further contends that the warrantless search and laboratory analysis of the clothing he was wearing at the time of the arrest was a violation of his rights against unreasonable search and seizures under the fourth and fourteenth amendments to the United States Constitution and article I, section 14, of the Alaska Constitution.[13] Since the state submits that this search was valid as incident to a lawful arrest, citing United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Erickson v. State, 507 P.2d 508 (Alaska 1973)[14] and McCoy v. State, 491 P.2d 127 (Alaska 1971), it is useful at the outset to delineate several issues that are not presented by the search. First, there is no contention by appellant, nor any indication in the record that the actual arrest was invalid or not based on probable cause. See

McCoy v. State, 491 P.2d at 138, and cases cited at n. 53 therein. Second, there is no contention that the reason for the search of the clothing was information gained from the concededly illegal search of Lemon's hotel room so as to invoke the "fruit of the poisonous tree [doctrine]" of Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963). Thus, the sole issues presented are whether the search was too remote from the actual arrest or too intense in scope as to negate its status as a search incident to a valid arrest.

■ With respect to the remoteness issue, we have previously held in McCoy v. State, that a search is nonetheless "incident" to an arrest simply because the search is conducted at the station house and not at the actual scene of the arrest. It is permissible to bring a suspect to the station house for a full search of his person to spare him the embarrassment of a public search. In *McCoy*, we quoted with approval the following language from United States v. DeLeo, 422 F.2d 487 (1st Cir. 1970), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970), which summarizes the incongruity a contrary result would produce:

the fact that a suspect, arrested in a public place, has been subjected only to a

---

P.2d 134, 144 (Alaska 1969). (Footnote omitted)
This policy is embodied in AS 12.45.020 which provides:
A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

13. The fourth amendment provides:
   *Searches and seizures.* The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized.
The fourth amendment is applicable to the states through the due process clause of the fourteenth amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
Article I, section 14 of the Alaska Constitution provides:
   *Searches and seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

14. In Erickson v. State, we indicated that all searches require a warrant except with reference to certain narrowly-defined exceptions.

hasty search for obvious weapons has a reasonable nexus with the necessity of conducting a more deliberate search for weapons or evidence just as soon as he is in a place where such a search can be performed with thoroughness and without public embarassment to him. While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence. Were this not to be so, every person arrested for a serious crime would be subjected to thorough and possibly humiliating search where and when apprehended. We see no constitutional mandate for such a practice. (Footnotes omitted; citations omitted.) 491 P.2d at 131.

A substantial majority of the federal and state courts are in accord with this result. See Annot. 19 A.L.R.3d 727, § 5–6 (1968). We emphasize, however, that this procedure is normally permissible only where the suspect has in fact been validly arrested, and not where the suspect is detained under the "stop and frisk" situation of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968).

Although there was a short delay between the time Lemon was brought to the station house and the seizure and search of his clothing, there was testimony at trial that the delay was due to the necessity of procuring other clothing for Lemon to change into. Given the exigencies of police work in rural Alaska, we feel that this delay was reasonable. Thus, the search was still "roughly contemporaneous" with the arrest so as to bring it within the boundaries of *McCoy*.

Since the search was incident to the arrest, we are then confronted with the issue of whether the search was so intense in scope as to violate the standards of *McCoy*.[15] In that case, we recognized that where there is probable cause to arrest a suspect, there is likewise probable cause to search his person for fruits, instrumentalities, and evidence of the crime for which the arrest is made.

> What is lawful arrest does justify is the search for fruits, instrumentalities and evidence *of the crime for which the arrest is made,* and this so only because the existence of probable cause for the arrest of a person normally justifies probable cause to believe that the suspect possesses such items. (Emphasis in original.)

491 P.2d at 137, quoting Note, Searches of the Person Incident to Lawful Arrest, 69 Col.L.Rev. 866, 871 (1969).

While we were citing that language with respect to the issue of whether a closed container found on a suspect's person could be opened, it is equally applicable to an analysis of his clothing, where there is probable cause to believe that the clothing contains evidence of the crime for which he is arrested.[16] The intensity of the

---

15. A different issue would be presented if the seizure and search of the clothes had occurred at such an interval after incarceration as to render it not incident to the arrest or if the clothing had been merely taken as "inventory" of the prisoner and a later decision was made to search. In Brett v. United States, 412 F.2d 401 (5th Cir. 1969), the court reversed an inventory search of the prisoner's clothing which occurred three days after the arrest. The clothing had been impounded at incarceration when the prisoner was issued prison garb. The court stated:

> The government urges that the search be held valid by analogy to laboratory testing without a warrant of the clothing of a jailed person. We decline to accept the invitation. Examination of the laboratory test cases discloses that with few exceptions they are concerned with testing of clothing *seized incident to arrest.* 412 F.2d at 406. (Emphasis added; citations omitted.)

16. For cases holding that a suspect's clothing worn at the time of arrest may be subject to search or laboratory analysis for evidence

search depends on the nature of the crime charged. The officer in the instant case testified that the reason he seized and searched the clothing was to search for evidence of the burglary.[17]

> Q. Why did you do this? [Seize and search the clothing]
>
> A. Because I—being a police officer, I knew that a case in Fairbanks here was being worked on Mr. Lemon, on a burglary not in a dwelling and I felt that fibers could have been left from his clothing—on the scene of the burglary and so forth and I seized the clothing.

Since there was a "likelihood" that the clothing Lemon was wearing at his arrest, one and one-half days after the alleged burglary, would contain evidence of the crime for which he was arrested, the search was valid and the testimony as to the specks of insulation discovered was admissible.[18]

The case is reversed and remanded for proceedings not inconsistent with this opinion.

of the crime for which the arrest was made, see Hancock v. Nelson, 363 F.2d 249, 252 (1st Cir. 1966) (murder); Golliher v. United States, 362 F.2d 594, 602 (8th Cir. 1966) (bank robbery); Robinson v. United States, 109 U.S.App.D.C. 22, 283 F.2d 508, 509 (1960), cert. denied, 364 U.S. 919, 81 S.Ct. 282, 5 L.Ed.2d 259 (1960) (burglary); and United States v. Guido, 251 F.2d 1, 3 (7th Cir. 1958), cert. denied, 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843 (1958) (bank robbery). *See also* Annot. 19 A.L.R.3d 727, § 6, at 742 (1968).

17. The dissent in *McCoy* recognized that such a search for evidence concealed on the suspect's person is permissible.
> It is also *permissible for the arresting officer*, incident to a lawful arrest, *to conduct a search for evidence of the commission of the offense for which the arrest has been made, provided there is a likelihood that evidence of this particular crime is concealed on the person of the arrestee.* It

is clear that such warrantless searches are permissible and may be conducted if, and to the extent that there is reasonable cause to believe that it is necessary to effectuate these purposes.[6]

6. The purposes being to effect the arrest and to insure the safety of the arresting officer and others, as well as *to prevent the concealment or destruction of evidence of the commission of the crime for which the arrest was made. McCoy,* 491 P.2d at 142. (Emphasis added.)

18. *See* Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) where a scraping of a detained accused's fingernails prior to his arrest, but when probable cause for arrest existed was upheld, in part due to the highly evanescent nature of the evidence sought. Similarly, the specks of insulation or other similar evidence from Lemon's trousers were likely to vanish if the clothing was not promptly seized.