**Thomas TOWNSEND and Roosevelt Terry, Petitioners-Appellants,**

v.

**C. Murray HENDERSON, Warden, Tennessee State Penitentiary, Respondent-Appellee.**

**No. 18516.**

United States Court of Appeals
Sixth Circuit.

Dec. 26, 1968.

---

B. Percy Magness (Court appointed), Winchester, Goff, Winchester & Walsh, Memphis, Tenn., on brief for appellants.

James M. Tharpe, Special Counsel, State of Tennessee, Memphis, Tenn., on brief for appellee; George F. McCanless, Atty. Gen. and Reporter, State of Tennessee, of counsel.

Before McCREE and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

COMBS, Circuit Judge.

In 1958, several prisoners attempted to escape from Fort Pillow Prison Farm in Tennessee. The appellant Terry and others, whose identity is not important here, attempted to overpower Deputy Warden Hunt in his office, apparently with intent to use him as a hostage. Appellant Townsend was also involved. After a brief struggle, the rebellious prisoners were subdued and the uprising was quelled. One prisoner was killed; Terry was knocked unconscious by a blow on his head and placed in a solitary confinement cell; others believed to be

involved in the insurrection were placed in close confinement.

For their part in the riot, Terry and Townsend were indicted under T.C.A. § 41–708 [1], found guilty by a jury and sentenced to life imprisonment. No direct appeal was taken from the judgments of conviction. Habeas corpus relief was denied by the Supreme Court of Tennessee in 1961. This Court granted habeas corpus relief in 1965 on the ground that appellants had been denied effective assistance of counsel. Townsend v. Bomar, 6 Cir., 351 F.2d 499. In the earlier case of Townsend v. Bomar, 6 Cir., 331 F.2d 19 (1964), this Court had directed the District Court to hold an evidentiary hearing.

On a second trial, appellants again were convicted and again were sentenced to life imprisonment. The Supreme Court of Tennessee affirmed. Appellants then filed in the District Court habeas corpus petition based on the grounds here involved. The petition was denied, and for the third time appellants are before this Court.

Presented for consideration are three issues: 1) Were members of the Negro race systematically excluded from the grand jury which indicted appellants? [2]

2) Was an oral confession by appellant Terry properly admitted into evidence?

3) Was Terry's co-defendant Townsend prejudiced by admission of Terry's confession which also incriminated him? All of these issues were properly raised at appellants' second trial in the Tennessee state court and in the habeas corpus proceedings in the District Court.

We consider first whether Negroes were systematically excluded from the grand jury which indicted appellants. They were indicted by a grand jury for Lauderdale County, Tennessee, on October 6, 1958. It was established at an evidentiary hearing conducted by the District Judge that no Negro had sat on a grand jury in Lauderdale County from 1933 through 1957. There is evidence, however, of a change of policy and that commencing with the year 1958 Negroes were not excluded from jury service in Lauderdale County. There is testimony, unsubstantiated but not specifically denied, that Negroes did serve on the jury panel from which the grand jury was drawn for the October, 1958 term. It is clear that Negroes were not excluded from the petit jury which decided appellants' case at their second trial. The District Judge's opinion states that at least four Negroes served on that jury. At another place in the record reference is made to six Negro members of the petit jury.

It is settled law that systematic exclusion of members of any race or ethnic group from either a grand jury or a trial jury deprives those excluded of equal protection of the law; and any member of the excluded group indicted or convicted by a jury so constituted is entitled to relief. Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032 (1964); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935); Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879).

If Negroes were not excluded from the jury panel from which the grand jury was drawn, the mere fact that no Negro served on the grand jury is not sufficient proof that Negroes were systematically excluded. Anderson v. Johnson, 371 F.2d 84 (6th Cir. 1966).[3]

---

1. T.C.A. § 41–708—Rebellion with intent to kill or escape.—If any convict confined in the penitentiary for a term less than life, openly rebel with intent to kill the warden or any other officer thereof, or with intent, by open violence, to escape, he shall, on conviction thereof, be imprisoned in the penitentiary for life.

2. Appellants are Negroes. At the time of the riot, Townsend was twenty-one years old and Terry was nineteen. They were serving sentences imposed by a Tennessee state court for burglary or theft.

3. One member of the panel dissenting.

See also Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

■ Both the Supreme Court of Tennessee and the District Court have found that appellants failed to establish systematic exclusion of Negroes from the grand jury which indicted them. Our rule is that the District Court's finding on this issue, as on any other factual issue, will not be set aside unless clearly erroneous. Anderson v. Johnson, supra. We have examined the original record in this case and are unable to say from our review of the evidence that the finding of the District Court is clearly erroneous. We hold therefore that appellants' reliance on this issue is misplaced.

We look now to the issue of Terry's confession. The confession was oral and, according to Deputy Warden Hunt, was made on the day following the riot. During the course of an investigation being made by Hunt, he approached Terry then in a solitary confinement cell and asked him about the riot. Hunt testified:

"I asked him what part Townsend and himself or Terry and himself [sic] and Townsend and Muse and Sharp and Buxton, what part they had played in this affair that happened the day before; and Terry said that Townsend and Muse and Sharp and himself had planned to take charge of that office and escape and take me with them." [4]

The conversation between Hunt and Terry was very brief. Terry was not warned of his right to remain silent, of his right to counsel, or that any statement made by him might be used in a subsequent criminal investigation. This last factor has more than usual significance because there is indication in the record that past incidents of this nature had been handled internally by prison officials. Terry denied making any statement but we have no doubt the statement was made as related by Deputy Warden Hunt.

The District Judge held that Terry's confession was voluntary and could be considered against him although the jury was admonished not to consider it against Townsend.

■ In testing the voluntariness of the confession, it is necessary to look to the conditions under which it was made. Terry was an illiterate youth of nineteen who had been in prison about two years, serving a sentence of three-to-five years. He was in solitary confinement and was suffering from a head wound received the preceding day which had rendered him unconscious and for which he had received medical treatment during the interim. According to Terry, when a prisoner was subjected to solitary confinement, he was stripped of his clothes and placed in a dark cell on a diet of bread and water. The cell contained only the most primitive sanitary facilities and a board for a bed. State witnesses did not attempt to describe the conditions of Terry's confinement, so we must accept his testimony on this subject as true. Moreover, since solitary confinement for prisoners is considered additional punishment, it is common knowledge that the solitary cells are not designed for comfort.

Appellants' counsel relies on Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), as authority for his argument that Terry's confession was involuntary. We think the rule of *Escobedo*, which requires that a person being interrogated by police authorities be advised of his right to counsel is applicable here, but not decisive. Terry was faced with stark realities, not with the question of fringe benefits. In his world as viewed through the bars of his dark cell, the right to counsel was of secondary importance. His mind had to be on more pressing matters: how long would he be held in solitary confinement; when would he receive further medical treatment if that was required; when would his diet of bread and water be supplemented; and

---

4. Sharp was killed in the riot. Muse was tried with Terry and Townsend, convict-ed, and sentenced to life imprisonment; he is not a party to this appeal.

what additional punishment would be imposed on him. Since these were factors which Terry had to consider, they are also factors which must be considered by us in determining whether his confession was voluntary.

■ The Tennessee rule in regard to voluntariness of a confession, was stated by the Supreme Court of Tennessee in its consideration of this case:

"In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort; and, of course, whether the confession was obtained by coercion or improper inducement can be determined only by an examination of all the attendant circumstances."

This is the same test, and even the same words used by the Supreme Court in Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963).

In Lisenba v. California, 314 U.S. 219, 241, 62 S.Ct. 280, 86 L.Ed. 166 (1941), the test is said to be whether the accused was deprived of his "free choice to admit, to deny, or to refuse to answer."

■■ We reach the inevitable conclusion under any of these tests that Terry's confession was not a voluntary one. Coercion that vitiates a confession can be mental as well as physical. Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L. Ed. 716 (1940). The blood of the accused is not the only hallmark of an unconstitutional inquisition. Blackburn v. Alabama, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Subtle pressures may be as telling as coarse and vulgar ones. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Secret and incommunicado detention are devices commonly adapted and used to extort confessions. Haynes v. Washington, supra. Solitary confinement has been equated with the rack, the screw, and the wheel as a means of compulsion used through the centuries to obtain confessions. Chambers v. Florida, supra.

■ The Supreme Court has held consistently that, in the trial of a criminal case, the use of a confession obtained by threat of punishment is inadmissible under the Due Process Clause of the Fourteenth Amendment. Chief Justice Hughes, in Brown v. Mississippi, 297 U. S. 278, 287, 56 S.Ct. 461, 465, 80 L.Ed. 682 (1936), quoted the following from Fisher v. State, 145 Miss. 116, 100 So. 361:

"Coercing the supposed state's criminals into confessions and using such confessions so coerced from them against them in trials has been the curse of all countries. It was the chief inequity, the crowning infamy of the Star Chamber, and the Inquisition, and other similar institutions."

In Terry's case there was more than the threat of punishment; the punishment had already commenced. The realities of the situation necessarily conveyed to the prisoner, without the necessity of spoken words, the implied threat of further punishment. At least in Terry's mind, if not in point of fact, Warden Hunt had complete power to cause his removal from the dark cell or to keep him there indefinitely. He had the power to prolong or to lighten his punishment. Under these circumstances, Terry lacked a "free choice to admit, to deny, or to refuse to answer." We reach this conclusion without expressly finding that Warden Hunt would have in fact increased Terry's punishment if he had refused to talk; that is beside the point. The point is that in Terry's mind he had the power to do so.

It has been suggested that Terry had committed a very grave offense and that the maintenance of prison discipline required him to be placed in solitary confinement. Perhaps so, but that is not the question before us. We reach our conclusion in regard to Terry's confession without consideration of his guilt in the riot and without consideration of the methods utilized by prison authorities to maintain discipline. Those methods are not described in this record, except incidentally as they affect the prisoner Terry. The solitary confinement of prisoners as a means of enforcing discipline is a subject

for study by penologists and sociologists. But, the admissibility in a judicial proceeding of a confession extracted from a prisoner by his jailer while he is in solitary confinement is a question for the courts. That question is squarely before us here and we hold that Terry's confession should not have been used against him.

We do not rest our decision on the rule of Escobedo v. Illinois, supra, or Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but rather on earlier cases such as Brown v. Mississippi, supra, and Chambers v. Florida, supra, which hold that a confession is inadmissible when obtained by compulsion in the form of punishment or the threat of punishment.

 The remaining question is whether the admission of Terry's confession, which was of crucial significance in the case against his co-defendant Townsend, requires reversal of the judgment against Townsend. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), seems to us to be decisive on this point. Bruton holds that in a joint trial the introduction of one defendant's confession incriminating his co-defendant may violate the co-defendant's right of cross-examination secured by the Sixth Amendment. In the circumstances of that case, it was held that limiting instructions by the trial judge did not eliminate the substantial prejudice. This is a similar situation and the rule of Bruton is clearly applicable.[5] This rule is enforceable against the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L. Ed.2d 923 (1965).

The only possible distinction between the present case and Bruton is that in Bruton the co-defendant did not take the witness stand, whereas here Terry did testify in his own behalf. But, this distinction is unimportant since, although Terry was called as a witness, he denied

making the confession. Townsend therefore had no effective right of cross-examination in regard to the confession. A similar question was presented in Douglas v. Alabama, 380 U.S. 415, 420, 85 S. Ct. 1074, 1077, 13 L.Ed.2d 934 (1965), and it was there held "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his."

Clearly, too, in a case like this the rule of Bruton should be given retrospective effect. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Also see Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), and Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966).

It is regrettable that ten years after this abortive prison escape the punishment for all those involved has not been finally settled by the courts. It is examples like this that bring criticism on the whole system of judicial administration. This case also points up the dangers inherent in failing to safeguard the constitutional rights of those accused of crime. This Court found it necessary to reverse the first conviction of these appellants because they were put to trial on the very day they were informed of their indictment. Now, the second conviction has to be reversed because of the use of a confession obtained in a manner clearly prohibited by the federal constitution. Both of these errors could have been avoided if even the slightest consideration had been given to the constitutional rights of the appellants. The riot occurred during daylight hours and more than one witness observed the activities of those who participated. No good reason has been advanced why appointed counsel for appellants should not have been given reasonable time to investigate the case and make preparation for such defense as was available to appellants. Nor has any good reason been advanced why the state insisted on introducing Terry's con-

5. See, however, United States v. Levinson et al., 405 F.2d 971 (6th Cir. 1968), where it was held that limiting instructions were

sufficient under the circumstances there shown.

fession rather than relying on the testimony of eyewitnesses who were easily obtainable.

The judgment of the District Court denying the petition for writ of habeas corpus is vacated and the case is remanded. On remand, the District Court will enter appropriate orders consistent with this opinion, allowing the state reasonable time in which to retry the appellants if it desires to do so.