**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Bartley KOCH,
Defendant-Appellant.**

**No. 76–1091.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1977.

Decided April 1, 1977.

---

Raymond Lawler, Marion, Ill., Richard Green, Carbondale, Ill., for defendant-appellant.

Henry A. Schwarz, U. S. Atty., Walter E. Schroeder, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and EAST, Senior District Judge.*

PER CURIAM.

In October 1975, a three-count indictment was returned against Koch and co-defendant Van Dusen. Count 1 charged Koch with the August 21, 1975, murder of Wayne Martin, another inmate in the federal penitentiary at Marion, Illinois, in violation of 18 U.S.C. § 1111, and Count 3 charged him with conveying a knife from place to place within that penitentiary in violation of 18 U.S.C. § 1792.[1] After a jury trial, the jury found Koch guilty of the lesser included offense of voluntary manslaughter under Count 1 and found him guilty as charged in Count 3. He received a ten-year sentence on Count 1 to run consecutively to a federal sentence then being served, and a ten-year sentence was imposed on Count 3, to run concurrently with the sentence imposed on Count 1.

The only issue presented on appeal is whether defendant's oral statement to Federal Bureau of Investigation agents should have been suppressed. After a pretrial hearing on defendant's motion to suppress, the district judge ruled as follows:

"The Court has considered the testimony presented here on your motion to suppress. The Court feels based on the evidence presented that the defendant, Robert Bartley Koch was properly advised of his rights; that he was not overreached; that any statement that he made as a result thereof subsequent to the advice was voluntarily [sic] and accordingly the Court denies the motion to suppress those or that statement."

After the trial testimony of the first eleven Government witnesses had been heard by the jury, defendant's counsel renewed his motion to suppress at sidebar and asked the court to hear the testimony of Abshire, Harp and Densen, three other inmates at the Marion penitentiary, to show it was a common practice at the prison to obtain confessions by placing suspects in a "boxcar" cell. However, the district judge declined to hear further evidence with respect to the motion to suppress and adhered to his original ruling denying the motion. We reverse and remand for a new trial.

■ Preliminarily, Koch argues that his statement was inadmissible because when he was initially questioned by Marion Supervisor of Investigation Walter F. Willcott immediately after the fatal wounding of inmate Martin, Koch said, "I would rather not talk about it for the time being * * *." Six hours later, he commenced giving his statement to the FBI agents after receiving the warnings mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, but upon the interview's completion at 10:18 P.M. he refused to sign the statement. He had previously refused to sign the waiver of rights form tendered him by the agents. These facts do not *ipso facto* demonstrate the involuntariness of Koch's confession. Both agents tes-

---

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

1. In Count 2 of the indictment Van Dusen alone was charged with assaulting an employee of a federal penitentiary on August 21, 1975, in violation of 18 U.S.C. §§ 111 and 1114. We affirmed his conviction in an unpublished order of March 28, 1977. He is not involved in the present appeal.

tified that they did not know that Willcott had earlier tried to obtain a statement from Koch. His refusal to give such a statement on the afternoon of August 21 does not taint the confession given that evening to the FBI agents during the 1½-hour-long interview with them. As in *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 46 L.Ed.2d 313, Koch's right to cut off questioning was fully respected by Willcott. When the FBI agents questioned Koch six hours later, he was given full and complete *Miranda* warnings at the outset. His refusals to sign the waiver of rights form or the confession itself with the absence of counsel during his interrogation without more do not bar the confession's admissibility. *Crisp v. United States,* 435 F.2d 354, 357–359 (7th Cir. 1970), certiorari denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116; *United States v. Smith,* 379 F.2d 628, 632–633 (7th Cir. 1967), certiorari denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486.[2]

■ Defendant's principal argument is that his statement was inadmissible because it was extracted through confining him to a "boxcar" cell for six hours. The evidence showed that a boxcar cell is a 6′ x 8′ room with an interior barred door and an exterior solid door that is kept shut. The solitary occupant is deprived of all personal property and is without visibility outside of the cell, "necessary hygiene" or ability to speak to others. In such circumstances, the Government has "a heavy burden" to demonstrate that an ensuing confession is voluntary and a court must examine the confession with the "most careful scrutiny." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Haynes v. Washington,* 373 U.S. 503, 511 n. 8, 514–515, 519, 83 S.Ct. 1336, 10 L.Ed.2d 513.

Agent Dueker testified that he knew that Koch had been transferred from the regular segregation unit to the boxcar unit from at least 3:15 p. m. to 8:48 p. m.[3] before he and Agent Groh first talked to Koch in the investigational supervisor's office at the penitentiary. As seen, Koch testified that he told Supervisor Willcott shortly after the 2:15 p. m., death of Martin that he would not talk about the matter "for the time being." Consequently, he was then moved "to H Unit, boxcar." He said that it was his knowledge that when a major incident occurred at the Marion penitentiary such as a murder or assault, the suspect would be put in the boxcar, if he should refuse to give a statement, in order to get him to confess. Koch testified that after another killing occurred in the penitentiary three weeks later, a suspect named Castenada was placed in the boxcar and was still there six or seven months later because he had not confessed. He said that he had a fear of close places and had a tendency to try to commit suicide when locked in a tight room. Indeed, he had previously tried to commit suicide in a similar situation[4] and was seriously contemplating it when confined in this boxcar. When asked whether he gave the statement voluntarily, he said the reason he gave it was "It's either a question of trying to get a statement and getting out of the boxcar and going to I Unit [regular segregation] or stay in the boxcar until trial and not give a statement." He mentioned that he was finally released from the boxcar the morning following his statement to the FBI. In closing his direct testimony, he said that if a suspect inmate cooperated

2.  *Brewer v. Williams,* —— U.S. ——, 97 S.Ct. 1232, 51 L.Ed.2d 424, *United States v. Jenkins,* 440 F.2d 574 (7th Cir. 1971), and *United States v. Nielsen,* 392 F.2d 849, 853 (7th Cir. 1968), are not to the contrary because in those cases the defendants did not intelligently waive their *Miranda* or Sixth Amendment counsel rights. Here Koch waived his rights intelligently and knowingly. His chief argument is founded on coercion spilling over from his relationship with the prison officials—staying in the boxcar until he gave a statement. But vis-à-vis the FBI agents, there was nothing in their conduct to detract from the voluntariness of his statements. *Michigan v. Mosley,* 423 U.S. 96, 104–106, 96 S.Ct. 321, 46 L.Ed.2d 313.

3.  In their briefs, counsel for the Government and for defendant agree that Koch was in the boxcar for six hours before giving his statement to the FBI.

4.  At the oral argument, we were told that the prison officials knew of Koch's suicidal tendencies from his administrative file jacket.

with Mr. Willcott, he would be given the lesser of two evils, namely, the regular segregation I Unit, "which is open and you can talk out of your cell." On redirect, Koch said that he was familiar with the boxcar practice through what he heard from fellow inmates.

Co-defendant Van Dusen corroborated Koch's testimony by testifying that if a prisoner cooperated with the investigating officers or the FBI, he would be put in a regular segregation cell, but otherwise would be put in a boxcar until "willing to cooperate with the government." After stating that he was familiar with fellow-prisoner Castenada's alleged offense three weeks after the Martin incident, he said that Castenada was still in the boxcar, but this answer was stricken after the prosecutor objected on relevancy grounds. Thereupon Koch's counsel offered to prove through Van Dusen that the boxcar practice at Marion was illustrated by Castenada's confinement in a boxcar for six or seven months because he did not give a statement. The Government did not cross-examine Van Dusen except to elicit that he had been convicted of prior felonies.

In our view, the foregoing testimony with respect to Koch's confinement in the boxcar denigrated from the voluntariness of the confession he gave upon his temporary release therefrom.[5] Therefore, the Government had the burden of establishing the voluntariness of the confession. While twelve prison officials, including Willcott, were present at the suppression hearing,[6] the Government did not see fit to call upon any of them to rebut the uncontradicted testimony with respect to the boxcar practice at this prison. Since no counter-testimony was proffered although numerous prison officials were readily available at the suppression hearing, it is hard to ignore the resulting innuendo that a cover-up was afoot. If the boxcar practices actually are as Koch describes them, they would represent the type of solitary confinement which "has been equated with the rack, the screw, and the wheel as a means of compulsion used through the centuries to obtain confessions." *Townsend v. Henderson*, 405 F.2d 324, 328 (6th Cir. 1968).

But we need not intuit the unknowable in order to find a Fifth Amendment violation. As in *Townsend, supra* at 327, the prosecution offered no witnesses to describe the conditions of Koch's boxcar confinement, so that we simply must accept his and Van Dusen's testimony on this subject as true. The following discussion of Judge Combs in *Townsend* is particularly apt:

"In Terry's case there was more than the threat of punishment; the punishment had already commenced. The realities of the situation necessarily conveyed to the prisoner, without the necessity of spoken words, the implied threat of further punishment. At least in Terry's mind, if not in point of fact, Warden Hunt had complete power to cause his removal from the dark cell or to keep him there indefinitely. He had the power to prolong or to lighten his punishment. Under these circumstances, Terry lacked a 'free choice to admit, to deny, or to refuse to answer.' We reach this conclusion without expressly finding that Warden Hunt would have in fact increased Terry's punishment if he had refused to talk; that is beside the point. The point is that in Terry's mind he had the power to do so." (405 F.2d at 328.)

Like *Townsend*, the unrefuted testimony here is that this confession was extracted from Koch by his interrogators after he was in exacerbated solitary confinement. Since it was "obtained by compulsion in the form of punishment or the threat of punishment" (405 F.2d at 329), the motion to suppress should have been granted. See *Garrity v. New Jersey*, 385 U.S. 493, 497–498, 87 S.Ct. 616, 17 L.Ed.2d 562; *Brooks v. Florida*, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643; *Unit-*

---

**5.** In reviewing the trial court's voluntariness assessment, it is our duty to make our own examination of the record. *Brooks v. Florida*, 389 U.S. 413, 415, 88 S.Ct. 541, 19 L.Ed.2d 643.

**6.** See Tr. 81 and Reply Br. 3, 7, 9.

*ed States v. Olof,* 527 F.2d 752, 753–754 (9th Cir. 1975).

The judgment below is reversed, the confession is suppressed, and defendant is granted a new trial as to Counts 1 and 3.