**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Willie HORTON, Defendant-Appellant.**

No. 77–2187.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1979.

Decided July 2, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 27, 1979.

**320**

Richard L. Darst, Indianapolis, Ind., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Richard N. Cox, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and HOFFMAN, Senior District Judge.*

PELL, Circuit Judge.

The defendant Willie Horton was convicted after a bench trial on all counts of a four-count indictment charging distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1). He was sentenced to eight years on each count with the sentences to run concurrently. In this appeal he argues that the trial court erred in admitting recorded conversations between himself and an informant, that the convictions on Counts II and III of the indictment are multiplicitous, and that the sentences imposed on Counts I, II, and III exceed the statutory maximum.

### I. The Recorded Conversations

The recorded conversations admitted and considered by the district court were obtained by Special Agent Kenneth Labik of the Drug Enforcement Administration (DEA) through the cooperation of Marcus Fisher, a confidential informant. Fisher began working as an informant for the DEA on November 1, 1976, in return for certain benefits. That day he called Horton from the DEA office in Chicago to discuss the purchase of narcotics. Agent Labik recorded the conversations with Fisher's permission. Agent Labik then placed a "KEL-set" transmitter on Fisher, with his permission,

and Fisher met with the defendant and purchased the controlled substance. This procedure was repeated on December 2, 1976, and on January 12, 1977, resulting in two more narcotics purchases.

■ Horton challenges the admission of these recorded conversations on several grounds. First, he argues that warrantless recordings with the consent of only one of the parties violates the Fourth Amendment. We cannot agree. The law is well-settled that

> there is no interest protectible by the Fourth Amendment in those situations in which one party to a conversation reposes a trust or confidence in the other party who is actually an undisclosed government agent or informant. *E.g., Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). · . . . Nor is the Fourth Amendment violated because the undisclosed agent simultaneously records the conversation with an electronic recording device on his person, *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), or because the conversation is electronically transmitted by the undisclosed agent to a remote place where it is overheard by other agents and/or recorded. *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *On Lee v. United States,* 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

*United States v. Craig,* 573 F.2d 455, 474 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 82, 58 L.Ed.2d 110 (1979). *Accord, United States v. Bastone,* 526 F.2d 971, 978 (7th Cir. 1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976); *United States v. Santillo,* 507 F.2d· 629 (3d Cir. 1975), *cert. denied,* 421 U.S. 968, 95 S.Ct. 1960, 44 L.Ed.2d 457; *United States v. Lippmann,* 492 F.2d 314 (6th Cir. 1974), *cert. denied,* 419 U.S. 1107, 95 S.Ct. 779, 42 L.Ed.2d 803 (1975); *United States v. McMillan,* 508 F.2d· 101 (8th Cir. 1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); *United States v. Bonanno,* 487

---

* Senior District Judge Walter E. Hoffman of the Eastern District of Virginia is sitting by designation.

F.2d 654 (2d Cir. 1973); *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973), *cert. denied*, 414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56; *Ansley v. Stynchcombe*, 480 F.2d 437 (5th Cir. 1973); *Holmes v. Burr*, 486 F.2d 55 (9th Cir. 1973), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 850, 38 L.Ed.2d 744; *United States v. Quintana*, 457 F.2d 874 (10th Cir. 1972), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130.[1] The only authority offered by the defendant to support his contention are two state court opinions,[2] neither of which we find persuasive, especially in light of the overwhelming federal authority to the contrary.

The second ground on which the defendant challenges the admission of the recorded conversations is that the informant, Fisher, did not voluntarily consent to the electronic recording of his conversations with the defendant.[3] The defendant argues that Fisher's consent was not voluntary because of the benefits he received for cooperating with the DEA. In September or October of 1976, Fisher called Agent Labik from the Metropolitan Correctional Center and told Labik that he wanted to cooperate with the DEA. At the time Fisher was under indictment for the sale of heroin to which he pled guilty in September 1976. He offered several names, including Horton's, as possible targets of investigation. Labik told him that his cooperation with the Government could not hurt him in regard to his pending indictment, but Labik did not tell him that such cooperation would benefit him. Labik spoke with an Assistant United States Attorney on this matter who agreed to try to delay Fisher's sentencing until the investigation of the defendant was completed so that Fisher's cooperation could be made known to the sentencing court. The sentencing court was informed of Fisher's cooperation and sentenced him to five years probation. Labik also communicated with a Michigan State's Attorney in regard to a matter as to which Fisher had pled guilty. The State's Attorney agreed that Fisher would be released from Michigan custody in consideration of time served. Fisher's cooperation with the DEA began after the occurrence of the Michigan incident. Finally, the Government gave Fisher approximately $4,700 for his work as an informant, approximately $3,500 to $4,000 of which was for his work regarding the defendant's investigation, and promised him safekeeping and protective custody.

At issue is whether these benefits vitiate Fisher's consent to the recording of his conversations with the defendant. The resolution of this issue is significantly simpler once it is understood that the standard for showing that an informer consented to the recording of a conversation is different from the standard for showing that a defendant or a third party consented to a physical search.

> In cases involving physical search, the person alleged to have consented is doing something apparently contrary to his own interests or to those of another who often is in some way connected with him. An informer's consent to the monitoring or recording of a telephone conversation is an incident to a course of cooperation with law enforcement officials on which he has ordinarily decided some time previously and entails no unpleasant consequences to him.

---

**1.** The defendant contends that *United States v. White* is not controlling because it is merely a plurality opinion. Justice Black, however, concurred with the four-man plurality on the broad ground that eavesdropping by electronic means does not constitute a search or seizure within the meaning of the Fourth Amendment. *White* is, therefore, authoritative on the constitutional validity of recording and transmitting devices on the person. *See United States v. Bonanno*, 487 F.2d 654, 657 n.1 (2d Cir. 1973).

**2.** *State v. Glass*, 583 P.2d 872 (Alaska 1978); *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511 (1975), *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111.

**3.** 18 U.S.C. § 2511(2)(c), which prohibits electronic interception of conversations, provides exceptions for persons acting under color of law if one of the parties to the communication has given prior consent to such interception. *See United States v. Wright*, 573 F.2d 681 (1st Cir. 1978), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792.

*United States v. Bonanno*, 487 F.2d 654, 658 (2d Cir. 1973).[4] On the basis of this distinction, the Second Circuit announced the standard, applicable to the present case, that "it will normally suffice for the Government to show that the informer went ahead with a call [or other recorded activity] knowing what the law enforcement officials were about." *Id.*

▪ Generally, any benefits that an informant might receive for cooperating with Government investigations would not vitiate his voluntary consent to the electronic recording of his conversations. For example, in *United States v. Frank*, 511 F.2d 25, 31 (6th Cir. 1975), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693, the defendants argued that

> Davis [the informant] had a long criminal record and had numerous charges pending against him. The Government placed him under full protective custody, gave him an extremely nice apartment for he [sic] and his girlfriend, provided him with a living allowance, secured for his use a new Cadillac automobile and gave him other special considerations. Additionally, Davis was never tried for or sentenced for any of the crimes for which he was charged prior to his agreement to cooperate with the government.

Nevertheless, the court found sufficient consent to the recordings. *Accord, United States v. Juarez*, 573 F.2d 267 (5th Cir. 1978), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (informant's consent upheld even though Government agents promised him relocation expenses and to inform prosecutor and sentencing judge of his cooperation); *United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973), *cert. denied*,

414 U.S. 823, 94 S.Ct. 124, 38 L.Ed.2d 56 (informant's consent upheld even though consent given under pressure of potential indictment and in return for promise of immunity).

The case law thus is quite clear that an informant's consent cannot be rendered involuntary merely because the Government has extended benefits to the informant in exchange for his cooperation. We recognize in situations such as the present one that the receipt of benefits, by the very definition of that word, will involve the lessening of penalties to which the benefits relate. This, of course, means that in determining his course of action, the informant to some extent will not only be looking at the amelioration of his situation but also at the implicit threat[5] that failure to cooperate will very possibly result in the threatened penalties becoming an actuality.

We do not regard this converse aspect of the benefits situation as vitiating the consent to cooperate. The fact of the possibility of penalties, whether or not they could actually have been visited if cooperation had not occurred, is a preexisting condition at the time the decision to cooperate is made. That which motivates the cooperation is the desire to change in a favorable manner the previously existing possibility, if not probability, of penalties. This does not in our opinion, fortified by the authorities previously cited, constitute anything in the nature of overbearing of the will. There is no one in a better position than the informant to know whether there are facts which could be the basis of penalties. The situation of consent, of course, might well be different if the consensual cooperation had been secured by actual threats of a

---

4. Cases involving the voluntariness of a confession are also inapposite. The defendant's citation of *United States v. Koch*, 552 F.2d 1216 (7th Cir. 1977), is therefore unpersuasive.

5. In *United States v. Ryan*, 548 F.2d 782 (9th Cir. 1976), *cert. denied*, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308, the court found the consent valid even though there would seem to have been involved actual threats by law enforcement officials of criminal punishment over which, of course, these officials would have

had no control. While the district court's opinion, which was affirmed by the court of appeals, appears to rest upon an analysis of all of the circumstances leading up to cooperation as showing that the informant was not coerced, we note *Ryan* only as a case holding contra to the position of the appellant in the case before us although involving facts reflecting on coerciveness far beyond any shown in the present case. We do not rely on *Ryan* for the result we reach.

physical nature or of prosecutorial action which had no realistic foundation. That is not the situation in the case before us.

■ Once it is shown that the cooperation has been undertaken, barring some affirmative evidence of will-overbearing coercive threats, we believe, as did the Second Circuit in *Bonanno* that the participation in monitoring or recording a telephone or other conversation in which the informant is a participant is merely incidental to the previously determined course of cooperation with law enforcement officials.

■ In the present case, Fisher received benefits in return for his cooperation, but under the standard just articulated, those benefits did not affect the validity of his consent. He was not coerced to cooperate. Indeed, he initiated the contact with the DEA and agreed to telephone the defendant and to wear the KEL-set. He cooperated because he thought the benefits were in his own best interest. In these circumstances his consent was valid. The district court, therefore, properly admitted the recordings.

■ The third ground on which the defendant challenges the use of the recorded conversations is that the federal statute authorizing such electronic surveillance denied him his Fifth Amendment right to equal protection of the law. 18 U.S.C. § 2511 provides that the interception of any wire or oral communication is unlawful and then provides exceptions in the subsections. Sections 2511(2)(c) and (d) provide:

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

(d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception

unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

The Illinois law on electronic eavesdropping is more restrictive. It provides:

A person commits eavesdropping when he: (a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so (1) with the consent of all of the parties to such conversation or (2) with the consent of any one party to such conversation and in accordance with Article 108A of the "Code of Criminal Procedure of 1963", approved August 14, 1963, as amended.

Ill.Rev.Stat. ch. 38, § 14–2(a). Article 108A permits law enforcement officers to apply to a circuit court judge for authorization to use an eavesdropping device, or to use such a device in an emergency without prior judicial approval. The defendant's equal protection theory is that Government agents could lawfully record his conversations under 18 U.S.C. § 2511, but state law prohibited him from similarly recording conversations to support his case. The fatal flaw in this argument is that the defendant confuses his rights under state law and federal law. Under federal law, 18 U.S.C. § 2511(2)(d), he could lawfully record conversations to which he was a party so long as the purpose of the recording was not to commit a crime. Therefore, if he desired to introduce such a recording during his trial, federal law would not have prohibited its admission. A more restrictive state law would not affect the admissibility of such evidence in a federal court. *See United States v. Keen*, 508 F.2d 986, 989 (9th Cir. 1974), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *United States v. Krol*, 374 F.2d 776, 778 (7th Cir. 1967), *cert. denied*, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97.

■ Even if Horton's argument were not flawed by its confusion of federal and state law, it would fail for another basic reason. His argument, like any equal protection ar-

gument, requires the existence of at least two classifications of persons which are treated differently under the law. "Equal protection is the guarantee that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same." J. Nowak, R. Rotunda & J. Young, Constitutional Law 520 (1978); *Tussman & ten Broek, The Equal Protection of the Laws*, 37 Calif.L.Rev. 341 (1949). The only classification discernible from the defendant's argument is the class of Illinois residents who are allegedly deprived of the right to engage in electronic surveillance and the class of Government agents who are permitted to engage in such surveillance for law enforcement purposes. The flaw here is that the Government agents are acting on behalf of the Government and not in their individual capacities; and the equal protection guarantee was not intended to eliminate differences between the rights of individuals and the rights of the Government. Accordingly, the defendant's argument would not pass even the initial stage of equal protection analysis.

■ Finally, Horton argues that although 18 U.S.C. § 2511(2)(c) permits interception of an oral communication, it does not permit disclosure of such interception and, therefore, the recordings were not properly admitted. The defendant reasons that § 2511(2)(c) and (d) permit interception but lack any language regarding disclosure of the intercepted conversations whereas other subsections specifically permit disclosure. The absence of the word disclosure is § 2511(2)(c) and (d), he contends, proves that conversations intercepted pursuant to these subsections cannot lawfully be admitted into evidence. We are unpersuaded by this construction of the statute because the issue is not disclosure in the broadest sense,[6] but rather admissibility in a federal court proceeding which is addressed specifically by 18 U.S.C. § 2515. Section 2515 prohibits

admission in evidence before any court of any intercepted communication if disclosure of that information would be in violation of this chapter [ch. 119] of the United States Code. Although this "provision is poorly drafted . . . [and] should not be read in an overly literal fashion . . ., [t]he section's primary purpose is apparently to exclude evidence derived from illegal, rather than legal, wiretaps. The section's main thrust is therefore to exclude evidence the *seizure* of which was in violation of the chapter, not evidence the *disclosure* of which was or would be in violation of the chapter." *Fleming v. United States*, 547 F.2d 872, 874 (5th Cir. 1977). We agree with the Fifth Circuit's construction of § 2515. Because the taped conversations in the present case were not intercepted in violation of the chapter but rather were intercepted pursuant to § 2511(2), their admission in evidence was proper.

## II. *The Sentences*

■ The defendant argues that the sentences imposed under Counts I, II, and III exceed the maximum penalty as authorized by 21 U.S.C. § 841(b)(1)(A). This section provides that the penalty shall be a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both, if the substance at issue is controlled under schedule I or II and is a narcotic drug. Lesser sentences are prescribed for non-narcotic drugs. The defendant argues that the sentences for the cocaine distributions at issue in Counts I, II, and III exceed the maximum in that the counts did not state that cocaine was a narcotic drug. It is clear, however, that Congress has determined cocaine to be a narcotic drug. 21 U.S.C. § 802(16) provides:

[t]he term "narcotic drug" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or indepen-

---

6. The subsections that specifically permit disclosure do not limit disclosure to admission in evidence in a court proceeding. They permit disclosure in a broader sense such as disclosure by personnel of the Federal Communications Commission in the discharge of their enforcement responsibilities, § 2511(2)(b), or by employees of communications facilities in the normal course of employment, § 2511(2)(a).

dently by means of chemical synthesis, or by a combination of chemical synthesis, or by a combination of extraction and chemical synthesis:

(A) Opium, coca leaves, and opiates.

(B) A compound, manufacture, salt, derivative, or preparation of opium, coca leaves, or opiates.

(C) A substance (and any compound, manufacture, salt, derivative, or preparation thereof) which is chemically identical with any of the substances referred to in clause (A) or (B)

Because Counts I, II, and III charged cocaine distributions and because cocaine is a narcotic drug as defined in § 802(16), the sentences imposed on these counts did not exceed the maximum penalty allowed by the statute.

### III. *The Multiplicitous Counts*

Horton argues and the Government agrees that the record indicates that Counts II and III of the indictment are multiplicitous in that the defendant was charged twice for what the evidence at trial showed to be one continuous act. The evidence showed that Fisher received contemporaneously from the defendant two packages containing cocaine on December 2, 1976. One of the packages was for Fisher, the other for his buyer. Each of the two packages delivered was charged in a separate count. Because the record indicates only a single distribution, Counts II and III are multiplicitous. We, therefore, vacate the judgment of conviction and sentence imposed for Count II and affirm the remaining convictions and sentences under Counts I, III, and IV.