## Commonwealth v. Wintrode

*Frank Scutella and Michael Cauley,* assistant district attorneys, for the Commonwealth.
*Leonard Ambrose,* for defendant Clark.
*John Garhart,* for defendant Wintrode.

NYGAARD, J., December 12, 1983 — This case involves two defendants, each of whom have raised a number of objections relative to the government's obtaining of evidence under the exceptions contained in the "Wire-tapping and Electronic Surveillance Control Act of 1978," 13 Pa. C.S. §5701 et seq.

The cases were combined for a suppression hearing before this court pursuant to the provisions of §5721(b) of the aforementioned act.

An evidentiary hearing on the three motions to suppress has been held and each party has been given the opportunity and has filed briefs on the motion, and addressed to the issues therein considered. While various other motions are contained in the omnibus pretrial motions, it is only the motion to suppress evidence secured by wire-tap and certain other intra-hearing motions that will be addressed by this opinion and order.

The statute itself provides specific requirements applying to a motion to suppress electronically seized evidence. These provisions are found in Section 5721 of the act and read as follows:

(a) MOTION TO SUPPRESS. — Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on any of the following grounds:

1. The communication was unlawfully intercepted.

2. (This subparagraph deals only with court authorized interceptions.)

3. (This subparagraph deals only with court authorized interceptions.)

Briefly, the facts are as follows. On or about May 16, 1983, defendant Sherman Clark, was charged by the Pennsylvania State Police with violations of the law. Later, a four count information was filed at 1347 of 1983 and against defendant, alleging one count of criminal conspiracy, one count of criminal solicitation, one count of receiving stolen property (since withdrawn), and one count of fraud in pro-

curing insurance or in collecting claims. He was also charged with two counts of receiving stolen property, one count of removal or falsification of identification numbers on a motor vehicle, and dealing with removed or falsified motor vehicle numbers, at no. 1228 of 1983.

Defendant Nevin Wintrode, was also arrested on May 16, 1983, and charged by the Pennsylvania State Police with criminal conspiracy, theft by deception, and fraud in collecting an insurance claim at no. 1035 of 1983.

During the course of their investigation, the State Police, probably pursuant to the suggestion of Assistant District Attorney Michael Cauley (Transcript of October 26, 1983 p. 86)[1] made use of electronic eavesdropping techniques pursuant to the provisions of 18 Pa. C.S. §5704. The Commonwealth's agent for this surveillance was one Richard McCullough. McCullough was originally arrested and charged with receiving stolen property and three other charges dealing with removal or falsification of motor vehicle identification numbers. By negotiations between his attorney, himself, and Assistant District Attorney Michael Cauley, an agreement was reached whereby the charges would be dropped for "lack of evidence" in return for his cooperation with the investigation. The agreement further permitted the charges to be refiled in the event McCullough failed to cooperate fully with the authorities. McCullough was also granted full immunity for any other uncharged violations to which he confessed during the course of his cooperation with

1 Due to the episodic nature of the hearing and its duration, the court is able to review only the testimony which has been transcribed but reference where possible, is made to specific testimony which the court has relied upon. For the balance we have relied upon our notes.

the Pennsylvania State Police. Thereafter, McCullough gave an approximate 30 page statement detailing his involvement, and presumably the involvement of others in the crimes concerning motor vehicles.

A few days after the statement was taken, the use of electronic surveillance was approved by Assistant District Attorney Michael Cauley, and a recorder was placed on McCullough's phone to trap incoming and outgoing calls. Later a "drop-line" was established at the Pennsylvania State Police Barracks and the listening and recording of conversations was performed by troopers while in their headquarters. McCullough was also wired on occasion with a KEL-Kit transmitter and a Nagra body recorder. The surveillance lasted from October, 1982 through at least February of 1983. During the course of this surveillance, conversations between McCullough and both defendants were recorded.

Also, at one point in the investigation, Trooper C.B. Lewis, was also outfitted with the KEL-Kit and Nagra body recorders and recorded conversations between himself and defendant Sherman Clark.

Defendants have filed omnibus pre-trial motions to suppress their statements thus electronically recorded, alleging as follows:

1. That the consent of McCullough was not voluntary;

2. That the blanket consent secured by the district attorney from McCullough is not statutorily permitted;

3. The assistant district attorney authorizing the wire or oral intercept did not sufficiently review the facts prior to authorizing the use of a wire or oral intercept;

4. The assistant district attorney authorizing the wire or oral intercept was not properly designated in writing by the district attorney;

5. The assistant district attorney authorizing the wire or oral intercept was not the actual custodian of the evidence obtained from the intercept;

6. The officer monitoring the wire or oral intercept was not certified as required by the statute;

7. The police did not comply with the requirements of the statute and keep a proper log of the calls;

8. The State Police and/or district attorney's office improperly disclosed contents of said recorded conversations to third parties;

9. That the wiretap equipment used to electronically record oral statements of the defendant was not provided to the State Police by the district attorney;

10. That during the recording of wire or oral statements, the State Police failed to minimize their intercept so that matters not dealing with criminal conduct would not be recorded.

Defendants' motion regarding the allegations contained in paragraphs 5, 6, 7, and 8 are denied inasmuch as violations even if they did exist, would not provide grounds for suppression of the electronically recorded statements, 19 Pa C.S. §5721(a)(1).

The allegation contained in paragraph 9 is without merit. The undisputed testimony at the hearing and consequently the finding of this court is that all equipment used by the State Police to conduct the electronic surveillance was properly provided by the Erie County District Attorney.

The allegations contained in paragraph 10 are without merit. The undisputed testimony of the Pennsylvania State Police and consequently the

finding of this court is that they did in fact minimize all conversations or intercepts not dealing with matters of criminal conduct by turning down the volume or by turning off the tape recorder.

The allegations contained in paragraph 4 are likewise without merit. The testimony at the time of the hearing was entirely to the contrary, and the Court specifically finds that all authorizations that were given by the district attorney's office were given by an assistant district attorney properly authorized and designated in writing by the district attorney.

The allegations above and numerated as 1, 2 and 3 require some further exposition. The Pennsylvania Wire-tapping and Electronic Surveillance Control Act of 1978, prohibits the interception, disclosure or use of any wire or oral communication and provides penalties and remedies for violation thereof. The act, however, provides some specific exceptions.

First, an attorney general or district attorney may make written application to a Superior Court Judge for an order permitting a "hard-wire" tap or electronic interception. This may be done only upon a showing to the satisfaction of the Court that certain specifically enumerated conditions exist (§5708, 5709 and 5710 of the act). Thereafter, the court may issue an exparte order subject to certain other specific limitations including time limitations, a designation of responsibility for the intercept, and the provision to the court of periodic and final reports (§5712).

The second exception, and now at issue before this court, is a consent interception pursuant to Section 5704, which provides:

It shall not be unlawful under this chapter for:

Any investigative or law enforcement officer or any person acting at the direction or request of an

investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the attorney general or a deputy attorney general designated in writing by the attorney general, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of Section 5714(a) (relating to recording of intercepted communications) and that the attorney general, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

This section is apparently for use by investigating officers on an episodic basis or when they cannot meet the specific requirements (such as the probable cause requirement) for an exparte order, or a court supervised intercept, National Commission, Electronic Surveillance Report of the National Commission on the Review of Federal and State Laws Relating to Wiretapping and Electronic Surveillance, p. 113-114, 117 (1976).

The court concludes that when this alternative (Section 5704) is selected, and because court supervision is entirely after-the-fact, the requirements contained therein must be strictly adhered to. There are several.

First, this section speaks in terms of the singular, ". . . one of the parties to the *communication* has given prior consent to such *interception*." (Emphasis added.) The court notes to the contrary, that when prior court approval is obtained, Section 5712 provides ". . . no order entered under this section shall authorize the interception of wire or oral *communications* for a period exceeding 20 days." (Emphasis added.) Accordingly, we hold that consent must be obtained prior to the intercept of each communication, and each communication not so consented to must be suppressed. We reject the Commonwealth's assertion that strict construction overlooks the practical reality, for the reason there is no way of knowing when calls would be coming in. After an initial interception of a selected call or oral communication to obtain the facts necessary to satisfy the requirements of Sections 5708-5710, the Commonwealth could and should seek a court supervised order.

Secondly, prior to each interception there must be:

    a. A review of the facts;

    b. A determination that the consent is voluntary;

    c. Prior approval to the interception; and

    d. By a district attorney or assistant district attorney authorized in writing.

The court finds that in each of McCullough's consents but three, the Commonwealth failed to prove by a preponderance of the evidence that this procedure was followed.

In all of the other consents, the assistant district attorney supervising the case, considered that their grant of approval was on a continuing basis, or presumably the authority to review facts and determine voluntariliness and thus authorization of the intercept was delegated to the Pennsylvania State Police.

This, the court concludes is improper. The act requires that the district attorney or an assistant district attorney duly authorized, review and give prior approval of each intercept. Any further delegation is not provided in the act and is unlawful.

It is clear to this court that the use of Section 5704 to sustain intercepts in an ongoing situation is extremely difficult, especially in an investigation such as this one which went on for months and months. However, the logic is clear; the fundamental and constitutionally protected right of privacy is at issue. The act is a balance weighing on the one hand the social cost of crime and on the other, the right of privacy for its citizenry. The application for an order is strictly supervised—the consensual provisions must be strictly construed.

With respect to the interceptions made on January 8, 1983 by Trooper C.B. Lewis the court finds that the appropriate procedure was followed. There was a prior review and approval made by Assistant District Attorney Connelly and there is no issue that the trooper's consent was entirely voluntary. Consequently, the motion to suppress statements electronically recorded on January 8, 1983 is denied.

Thirdly, Section 5704 provides that the authorizing District Attorney "shall be the custodian of the recorded evidence obtained therefrom." In this case the first intercept was made in October, 1982. The tapes were not turned over to the district attorney's office by the Pennsylvania State Police until May, 1983. While the court believes that this is an inordinately long period for the Pennsylvania State Police to retain the tapes, and the better practice would be to turn them over as soon as practical, this failure does not provide a basis for suppression of the recorded evidence, Section 5721(a)(1).

162

Finally, the issue which has caused the court the most concern is that of "voluntariness" with respect to Richard McCullough. The court finds that the agreement reached between the Commonwealth's agent, McCullough, and the district attorney was that all criminal charges filed against McCullough would be dismissed for "lack of evidence on the understanding that they could be refiled at a later date if (McCullough) fails to comply with the terms of the agreement . . ." And, that "in return for the dismissal, and in return for (McCullough's) continued truthful cooperation with any and all law enforcement authorities regarding his knowledge of or participation in the stolen automobile ring or rings, the dismissal of the charges . . . will stand." Further, that no information which McCullough gave to the authorities, nor admissions made as to further crimes, would be used against him. In essence, the Commonwealth offered both a "carrot," (the dismissal) and a "stick," (refiling the charges) to insure McCullough's continued cooperation. Later, when the idea of electronic surveillance was proposed to McCullough, the agreement was used to secure McCullough's consent; at the insistence of the State Police; by a witness who feared repercussions from the State Police. Further, the witness testified that he believed if he did not sign Commonwealth Exhibit No. 1 (the first consent to electronic surveillance) he ran the risk of prosecution and jail; that the consents were signed without his attorney present; and that at the time the original agreement was reached he did not anticipate nor was there any discussion of electronic surveillance.[2]

---

2. The witness' attorney testified that electronic surveillance was discussed at some time. However, it is the witness' voluntariness at issue and his testimony hereon is given most weight.

This court is without Pennsylvania appellate authority to guide it, but concludes based upon the careful consideration of the Federal Statute and the logic which the cases thereon afford us, that voluntariness is not achieved when the witness remains under a threat of prosecution should he fail to accede to the government's wishes. To permit the government to place one in the position of being compelled to perform and then argue that the consent thereto is voluntary would be an intolerable anomaly in the law. The court is convinced that the law neither intends that, nor could it pass constitutional muster. Such a device saps the very meaning of the word voluntary and leaves the area of consensual interception open to abuses by those who may unscrupulously do so.

The court notes that the Federal Statute does not contain the voluntariness requirement. Thus, while the cases construing the Federal Statute are legion, they are all construing a statute which has no explicit voluntariness requirement written into it. It has been read into the statute by Federal Case Law. Our statute has a voluntariness requirement and this court declines to read it out. Neither the provisions of the law nor the requirements of the Fourth Amendment may be circumvented in the name of more effective prosecution.

According to the cases construing the Federal Law, we find that generally any benefits that an informant might receive for his cooperation with the authorities would not vitiate his voluntary consent to the electronic recording of conversation. U.S. v. Horton 601 F.2d 319 (Seventh Cir. 1979). Nor does promises to bring the fact of the informant's cooperation to the attention of the prosecuting attorney and to recommend leniency, destroy the voluntari-

ness of one's consent. United States v. Brandon 633 F.2d 773 (9th Circuit 1980). Nor will merely calling an accused's criminal predicament to his attention to obtain cooperation with the investigating authorities vitiate an informant's consent. Brandon supra p. 777.

However, in U.S. v. Laughlin 222 F.Supp. 264 (1963), which is a case strikingly analogous to ours, a policewoman faced an implied threat of prosecution on a perjury charge unless she agreed to have her phone conversations recorded. The court in Laughlin held:

In the present case, it is clear to the court that the statements of both Mr. Sullivan and the deputy foreman of the grand jury, as quoted above, amounted to an implied promise that if Mrs. Gross consented to having the recordings made, she would not be indicted for perjury. Thus, there was a clear "hope of leniency," supra, in Mrs. Gross's mind, which hope was deliberately created by the implied promises of both Mr. Sullivan and the deputy foreman. Her consent, under the implied threat of being indicted if she did not cooperate and under the implied promise that she would not be indicted if she did cooperate, is not the kind of "authorization" contemplated by 47 U.S.C. §605, (pp. 268-269).

The court finds the logic of the Laughlin court most compelling. Thus, it is only when the "stick" of prosecution has been removed by grants of immunity, pleas of guilty, or no change in the status of prosecution, and only the "carrot" of benefits to the informant in exchange for cooperation remain, that a consent can be considered truly voluntary. Accordingly, under all the facts and circumstances of this case, we conclude that the consent of the informant, McCullough, was not voluntary.

## ORDER

And now, this December 12, 1983, it is hereby ordered as follows:

1. Defendants' motion to suppress statements of the defendants, electronically recorded by the Pennsylvania State Police via Richard E. McCullough, is granted.

2. Motion to suppress statements of defendant Sherman Ross Clark, electronically recorded by the Pennsylvania State Police via Trooper C.B.Lewis, on January 8, 1983 is denied.

3. Motion to suppress statements of defendant Sherman Ross Clark, electronically recorded by the Pennsylvania State Police via Trooper C.B. Lewis on January 9, 1983 is granted.